## MATTER OF PULA

### In Exclusion Proceedings

### A-26873482

*Decided by Board September 22, 1987*

(1) An alien's manner of entry or attempted entry is a proper and relevant discretionary factor to consider in adjudicating asylum applications.

(2) The circumvention of orderly refugee procedures can be a serious adverse factor in determining whether to grant asylum; however, it should not be considered in such a way that the practical effect is to deny relief in all cases.

(3) The circumvention of the immigration laws is only one of a number of factors which should be balanced in exercising discretion, and the weight accorded to this factor may vary depending on the facts of a particular case.

(4) The circumvention of orderly refugee procedures alone is insufficient to require the most unusual showing of countervailing equities. *Matter of Salim,* 18 I&N Dec. 311 (BIA 1982), modified.

EXCLUDABLE: Act of 1952—Sec. 212(a)(19) [8 U.S.C. § 1182(a)(19)]—Seeks to enter by fraud or willful misrepresentation of a material fact

Sec. 212(a)(20) [8 U.S.C. § 1182(a)(20)]—No valid immigrant visa

ON BEHALF OF APPLICANT:
Joanna Miller Bukszpan, Esquire
1414 Avenue of the Americas
New York, New York 10019

ON BEHALF OF SERVICE:
Janice Podolny
Appellate Counsel

Alan L. Page
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, and Vacca, Board Members. Concurring and Dissenting Opinion: Heilman, Board Member.

In a decision dated December 1, 1986, the immigration judge found the applicant excludable under sections 212(a)(19) and (20) of the Immigration and Nationality Act, 8 U.S.C. §§ 1182(a)(19) and (20) (1982). He granted the applicant's applications for withholding of deportation to Albania and Yugoslavia under section 243(h) of the Act, 8 U.S.C. § 1253(h) (1982), but he denied the applicant's ap-

plication for asylum under section 208 of the Act, 8 U.S.C. § 1158 (1982), and ordered that the applicant be excluded and deported from the United States. The applicant has appealed from the denial of his application for asylum. The Immigration and Naturalization Service has appealed from the grant of the application for withholding of deportation to Yugoslavia. The applicant's appeal will be sustained, and the Service's appeal will be dismissed.[1]

The applicant is a 26-year-old married male native of Albania and citizen of Yugoslavia. He arrived in the United States on June 5, 1986, and was placed in exclusion proceedings. The applicant does not contest on appeal his excludability under sections 212(a)(19) and (20) of the Act. We are satisfied from a review of the record that the applicant received a fair hearing and that his excludability has been clearly established. The only issues to be decided by the present appeal are whether the immigration judge's denial of asylum and grant of withholding of deportation to Yugoslavia were proper.

The applicant testified that he was born in Albania and fled to Yugoslavia with his family as a refugee when he was 5 years old. He said that he left Yugoslavia in 1986 to avoid further encounters with police officials who, on numerous occasions since 1979, had detained, interrogated, and physically abused him for hours or days at a time. He stated that the police insisted that he was involved in the political activities of the Albanian minority in Yugoslavia, although he denied the accusation. He said that the police sought information from him about such matters as his contacts with his Albanian family and friends, Albanian anti-government demonstrations, and discussions among local Albanian university students. He also testified that one of the periods of detention occurred in 1982 after he approached Yugoslav authorities to request travel documents to visit his sister in the United States. The applicant explained that the police accused him of planning to go to the United States to participate in anti-Yugoslav demonstrations with Albanians here.

The applicant further advised that in 1985 Yugoslav authorities did issue him a titre de voyage[2] so he could travel out of the country, but the American Embassy denied his application for a visa. According to the applicant, he was told at the embassy that the titre de voyage did not guarantee his return to Yugoslavia. The ap-

---

[1] This decision was originally entered on August 6, 1987. We have reopened on our own motion for the limited purpose of incorporating revisions for publication.

[2] A titre de voyage is a travel document issued in lieu of a passport under provisions of the United Nations Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 150.

plicant testified that he subsequently relinquished his refugee status and reluctantly accepted Yugoslav citizenship in order to qualify for a Yugoslav passport. He said that he left Yugoslavia on April 20, 1986, as soon as he managed to obtain the passport. He stated that he took a train to Brussels, Belgium, although he had made application to Yugoslav authorities only for permission to visit Turkey. He testified that he believed that the authorities would have denied him the passport if they had known that he intended to go to the United States. He also said that he was afraid to apply again for a visa at the American Embassy because most of the employees there were Yugoslav nationals who might be agents for the Government of Yugoslavia.

In addition, the applicant testified that he stayed in Brussels for 6 weeks with a man who had been a friend of his family in Albania and Yugoslavia. He said that his friend made a telephone call on his behalf to a refugee organization in Italy to inquire about whether he could obtain residency in an Italian refugee camp. According to the applicant, his friend was informed by the organization that citizens of Yugoslavia were not accepted as refugees in European states. The applicant also said that while he was in Brussels he applied for a tourist visa at the American Embassy, but his application was denied and he was told to go to Yugoslavia to apply for a visa. He testified that he did not ask for asylum at the American Embassy because he did not know that he could do so.

The applicant also stated that one day while he was discussing his situation in an Albanian coffee house in Belgium, a stranger there offered to sell him a titre de voyage for $1,000. He said that he gave the man his photograph and paid him the money 2 days later, when he returned with a titre de voyage issued by the Government of Belgium which had a tourist visa to the United States already entered. The applicant advised that the titre de voyage had been issued in the name of someone whom he did not know.

The applicant further testified that on June 5, 1986, he flew with his titre de voyage from Belgium to New York. He said that during a 2- to 3-hour stopover at the airport in Amsterdam, he mailed his Yugoslav passport to a cousin in the United States to avoid having it in his possession when he landed in New York. He explained that his inability to speak English made him concerned that immigration officials might discover the passport and put him on a plane to Yugoslavia before he could tell them about his desire for asylum. The applicant also stated that he did not dispose of the Yugoslav passport altogether because he planned to use it later to corroborate his account of events for his asylum request. In addition, the applicant advised that when he arrived in New York, lan-

guage differences did in fact prevent him and the immigration officer from communicating and, as a result, he did not tell the officer anything or sign any statements.

The applicant also testified that he chose to flee to the United States because he had relatives here. He stated that he had a sister and two uncles who were lawful permanent residents of the United States, and cousins who were United States citizens. He further advised that his wife, who was still living in Yugoslavia with their daughter, also had an uncle and cousins in the United States. The record reflects that many of the applicant's relatives traveled from such places as upstate New York, Texas, and California on multiple occasions to attend the applicant's hearings in New York City.

In his decision, the immigration judge stated that if the facts as described by the applicant were true, they established without a doubt that the applicant had been persecuted in the past and faced a clear probability of persecution in the future. The immigration judge then made a specific finding that the applicant's testimony was credible, noting that he had observed the applicant testify for approximately 8 hours over a period of 2 days. He accordingly found that the applicant had established his eligibility for withholding of deportation to Yugoslavia and Albania. The immigration judge further found, however, that the applicant was not eligible for asylum as a matter of discretion because the equity of his many relatives legally in the United States did not overcome the adverse factor of his having sought admission to the United States by use of a purchased travel document.

On appeal, the Service contends that the applicant has not established his eligibility for asylum or withholding of deportation to Yugoslavia because his testimony is not credible. It is argued that the applicant's persecution claim rests primarily on his own self-serving statements, that discrepancies exist between his testimony and his written asylum application, and that some of the facts to which he testified, such as his receipt of Yugoslav citizenship and a Yugoslav passport, are inconsistent with a clear probability or a well-founded fear of persecution. In addition, the Service maintains that the immigration judge correctly denied asylum in the exercise of discretion because the applicant sought admission to the United States with a false travel document.

The applicant asserts on appeal that there is no basis to disturb the immigration judge's credibility finding, and that he merits asylum on both statutory and discretionary grounds. He contends that the immigration judge gave undue weight to his manner of attempted entry in denying asylum in the exercise of discretion. He argues that in *Matter of Salim*, 18 I&N Dec. 311 (BIA 1982), the

Board of Immigration Appeals failed to consider that section 208(a) of the Act is "entry-blind." According to the applicant, the phrase "irrespective of such alien's status" in section 208(a) implies that Congress did not intend for the manner of entry or attempted entry to be relevant in determining eligibility for asylum. He maintains that while manner of entry may be considered as one of many factors in exercising discretion, it should not be used as the primary and overriding basis for denial.

The applicant bears the evidentiary burdens of proof and persuasion in any application for withholding of deportation under section 243(h) or asylum under section 208 of the Act. *Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985); 8 C.F.R. §§ 208.5, 242.17(c) (1987).

To be eligible for withholding of deportation pursuant to section 243(h) of the Act, an alien's facts must show a clear probability of persecution in the country designated for deportation, on account of race, religion, nationality, membership in a particular social group, or political opinion. *INS* v. *Stevic*, 467 U.S. 407 (1984). This means that the alien's facts must establish that it is more likely than not he would be subject to persecution for one of the grounds specified. *Id.*

To be eligible for asylum under section 208 of the Act, an alien must meet the definition of a "refugee," which requires him to show persecution or a well-founded fear of persecution in a particular country on account of race, religion, nationality, membership in a particular social group, or political opinion. Section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (1982); section 208 of the Act. The burden of proof required to establish eligibility for asylum is lower than that required for withholding of deportation. *INS* v. *Cardoza-Fonseca*, 480 U.S. 421 (1987). An applicant for asylum has established a well-founded fear if he shows that a reasonable person in his circumstances would fear persecution for one of the five grounds specified in the Act. *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987). Further, asylum, unlike withholding of deportation, may be denied in the exercise of discretion to an alien who establishes statutory eligibility for the relief. *INS* v. *Cardoza-Fonseca, supra; Matter of Mogharrabi, supra.*

We find no merit in the assertion by the Service that the immigration judge erred in assessing the applicant's credibility. The immigration judge found the applicant to be credible after observing his demeanor and listening to his testimony for 8 hours over a period of 2 days. The finding of an immigration judge with respect to the credibility of witnesses appearing before him will ordinarily be given great weight. *Wing Ding Chan* v. *INS*, 631 F.2d 978 (D.C.

Cir. 1980), *cert. denied*, 450 U.S. 921 (1981); *Vasquez-Mondragon v. INS*, 560 F.2d 1225 (5th Cir. 1977); *Matter of Magana*, 17 I&N Dec. 111 (BIA 1979); *Matter of Teng*, 15 I&N Dec. 516 (BIA 1975); *Matter of T-*, 7 I&N Dec. 417 (BIA 1957). We have carefully examined the record in this case and conclude that the immigration judge's determination is correct. In view of the detail, consistency, and candor of the applicant's lengthy testimony, we do not find that his credibility is impeached by the minor discrepancies in his written asylum application, which was prepared with the assistance of interpreters.

We further agree with the immigration judge's conclusion that if the applicant's testimony is true, it establishes that the applicant has been persecuted. We have considered the Service's argument that some of the actions of Yugoslav authorities towards the applicant, *i.e.*, granting him citizenship and issuing him a passport, appear inconsistent with an intent to persecute. Yet because the record reflects that those authorities nevertheless have persecuted the applicant, these apparent inconsistencies in treatment provide an insufficient basis, under the facts of this case, for rejecting the applicant's persecution claim. We conclude, therefore, that a reasonable person in the applicant's circumstances would fear persecution if returned to Yugoslavia, and that the applicant has established his statutory eligibility for asylum.

We turn now to the issue of whether the applicant merits asylum in the exercise of discretion. In *Matter of Salim, supra*, we denied asylum as a matter of discretion to an alien who was excludable under section 212(a)(19) of the Act and who attempted to circumvent the orderly procedures provided for refugees to immigrate lawfully. We found the fraudulent avoidance of orderly refugee procedures to be an extremely adverse factor which could only be overcome with the most unusual showing of countervailing equities.

The applicant argues that the decision in *Matter of Salim, supra*, improperly considered the alien's manner of attempted entry, because it overlooked language in section 208(a) of the Act, "irrespective of such alien's status," which makes the manner of entry irrelevant to eligibility for asylum. We reject the applicant's argument. Section 208(a) of the Act provides:

> The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 101(a)(42)(A).

Section 208(a) consists of only one sentence, which contains two independent clauses linked by the conjunction "and." A careful reading of the language of this section reveals that the phrase "irrespective of such alien's status" modifies only the word "alien" in the first clause of the sentence. The function of that phrase is to ensure that the procedure established by the Attorney General for asylum applications includes provisions for adjudicating applications from *any* alien present in the United States or at a land border or port of entry, "irrespective of such alien's status." *Cf. Yiu Sing Chun v. Sava*, 708 F.2d 869 (2d Cir. 1983); *Matter of Waldei*, 19 I&N Dec. 189 (BIA 1984) (discussing whether an alien in the status of a stowaway is entitled under section 208(a) to a hearing before an immigration judge on his application for asylum). The phrase does not apply to the second clause of the sentence, which is independent and separate from the first clause. This second clause contains authorization for the Attorney General to grant asylum applications at his discretion. The only express qualification on the exercise of this discretion is that the alien be a refugee within the meaning of section 101(a)(42)(A). Thus, while section 208(a) provides that an asylum application be accepted from an alien "irrespective of such alien's status," no language in that section precludes the consideration of the alien's status in granting or denying the application in the exercise of discretion.

Yet while we find that an alien's manner of entry or attempted entry is a proper and relevant discretionary factor to consider in adjudicating asylum applications, we agree with the applicant that *Matter of Salim*, *supra*, places too much emphasis on the circumvention of orderly refugee procedures. This circumvention can be a serious adverse factor, but it should not be considered in such a way that the practical effect is to deny relief in virtually all cases. This factor is only one of a number of factors which should be balanced in exercising discretion, and the weight accorded to this factor may vary depending on the facts of a particular case. We therefore withdraw from *Matter of Salim* insofar as it suggests that the circumvention of orderly refugee procedures alone is sufficient to require the most unusual showing of countervailing equities.

Instead of focusing only on the circumvention of orderly refugee procedures, the totality of the circumstances and actions of an alien in his flight from the country where he fears persecution should be examined in determining whether a favorable exercise of discretion is warranted. Among those factors which should be considered are whether the alien passed through any other countries or arrived in the United States directly from his country, whether orderly refugee procedures were in fact available to help him in

any country he passed through, and whether he made any attempts to seek asylum before coming to the United States. In addition, the length of time the alien remained in a third country, and his living conditions, safety, and potential for long-term residency there are also relevant. For example, an alien who is forced to remain in hiding to elude persecutors, or who faces imminent deportation back to the country where he fears persecution, may not have found a safe haven even though he has escaped to another country. Further, whether the alien has relatives legally in the United States or other personal ties to this country which motivated him to seek asylum here rather than elsewhere is another factor to consider. In this regard, the extent of the alien's ties to any other countries where he does not fear persecution should also be examined. Moreover, if the alien engaged in fraud to circumvent orderly refugee procedures, the seriousness of the fraud should be considered. The use of fraudulent documents to escape the country of persecution itself is not a significant adverse factor while, at the other extreme, entry under the assumed identity of a United States citizen with a United States passport, which was fraudulently obtained by the alien from the United States Government, is very serious fraud.

In addition to the circumstances and actions of the alien in his flight from the country where he fears persecution, general humanitarian considerations, such as an alien's tender age or poor health, may also be relevant in a discretionary determination. A situation of particular concern involves an alien who has established his statutory eligibility for asylum but cannot meet the higher burden required for withholding of deportation. Deportation to a country where the alien may be persecuted thus becomes a strong possibility. In such a case, the discretionary factors should be carefully evaluated in light of the unusually harsh consequences which may befall an alien who has established a well-founded fear of persecution; the danger of persecution should generally outweigh all but the most egregious of adverse factors.

Each of the factors mentioned above will not, of course, be found in every case. An applicant for asylum has the burden of establishing that the favorable exercise of discretion is warranted. *Matter of Shirdel*, 19 I&N Dec. 33 (BIA 1984). Therefore, the alien should present evidence on any relevant factors which he believes support the favorable exercise of discretion in his case. In the absence of any adverse factors, however, asylum should be granted in the exercise of discretion.

In the case before us, the applicant attempted to enter the United States with a fraudulent document. Yet we note that the

applicant had inquired about obtaining refugee status in Europe, only to be informed that the Yugoslav citizenship which he had recently accepted presented an obstacle to his being recognized by European countries as a refugee. Further, the record reflects that the applicant resorted to the purchase of the fraudulent document only after he was unsuccessful in several attempts at acquiring a visa to enter the United States legally to ask for asylum. We find no basis for doubting the applicant's testimony that he failed to request asylum at the American Embassy because he did not know that he could do so. In addition, the applicant remained in Belgium for only 6 weeks and was in the Netherlands for only a few hours; it does not appear that he was entitled to remain permanently in either country. Moreover, he decided to seek asylum in the United States because he had many relatives legally in the United States to whom he could turn for assistance. Although only the applicant's sister would typically be characterized as a "close" relative, the record reflects that many of his other relatives are also particularly supportive and concerned about him. We note that the applicant seems to have no significant ties to any other countries except for Albania and Yugoslavia, where he fears persecution. Based on the foregoing factors, therefore, we find that asylum should be granted in the exercise of discretion. We further find it unnecessary to decide whether the applicant has also established a clear probability of persecution in Yugoslavia for the purpose of section 243(h) of the Act. See Matter of Mogharrabi, supra.

Accordingly, the applicant's appeal will be sustained and the Service's appeal will be dismissed.

ORDER: The applicant's appeal is sustained and the Service's appeal is dismissed.

FURTHER ORDER: The applicant is granted asylum pursuant to section 208 of the Immigration and Nationality Act, as amended, and the exclusion proceedings are terminated.

Concurring in Part and Dissenting in Part: Michael J. Heilman
Board Member

In my view, this decision is headed in the right direction, the rejection of the unfortunate series of decisions starting with Matter of Salim, 18 I&N Dec. 311 (BIA 1982), in which so much emphasis was based on "circumvention" of the overseas refugee process, and on the manner of entry or attempted entry into the United States. These decisions were unfortunate because they betrayed a basic misunderstanding of the nature of the overseas refugee program

and, most essentially, the criteria a person had to meet to even be considered for the program, much less to qualify.

Equally as important, those decisions disregarded the clear language and clear purpose of section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158 (1982). The majority in this decision continues to disregard that language and purpose. Specifically, the phrase "irrespective of such alien's status" is interpreted by the majority as governing the procedures used to adjudicate asylum applications. I do not follow the logic of this approach. If the purpose of the phrase is as described by the majority, then it is simply surplus, as it adds nothing grammatically to that subsection, which could just as well read a "procedure for an alien physically present in the United States or at a land border or port of entry, to apply for asylum."

In my estimation, that subsection makes more sense if that phrase is read to describe the alien, not the procedure for adjudicating the asylum claim. This is so for two reasons. The first is the fact that there have been different procedures for different aliens to apply for asylum depending on their status and other factors. If this language required a single procedure, then it has never been implemented in that manner.

Secondly, the purpose of the asylum provision would be better served by abandoning the fixation with the manner in which the asylum applicant has arrived in the United States or at a port of entry. The asylum provisions are humanitarian in their essence and indeed recognize that the forces which impel persons to seek refuge may be so overwhelming that the "normal" immigration laws cannot be applied in their usual manner. This fact was recognized in the United Nations Convention and Protocol Relating to the Status of Refugees,[1] the international agreement which the asylum provisions implement. Not only did the Convention recognize the abnormal situations which give rise to refugee flows, it specifically forbade its signatories in Article 31 from penalizing a person who violated a signatory's borders, if the person presented himself promptly after arrival. Since the United States is a signatory to the Protocol and purports to apply the asylum and refugee laws consistently with that agreement, there seems little justification for the approach taken by the majority.

---

[1] United Nations Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 150; United Nations Protocol Relating to the Status of Refugees, Jan. 31, 1967, [1968] 19 U.S.T. 6223, T.I.A.S. No. 6577, 606 U.N.T.S. 268.

While I concur with the conclusion reached in this appeal, I do not join that part of the decision which interprets the phrase "irrespective of such alien's status." Asylum should be denied in the exercise of discretion only in exceptional circumstances.