# MATTER OF SOLEIMANI

## In Deportation Proceedings

### A-26157647

### *Decided by Board July 13, 1989*

(1) A finding that an alien was firmly resettled in another country does not render him ineligible for a grant of asylum under section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158 (1982), by an immigration judge or the Board of Immigration Appeals. *Rosenberg v. Yee Chien Woo,* 402 U.S. 49 (1971), distinguished. *Matter of Portales,* 18 I&N Dec. 239 (BIA 1982); and *Matter of Lam,* 18 I&N Dec. 15 (BIA 1981), modified.

(2) The Board and immigration judges are not bound by the provisions of 8 C.F.R. § 208.8(f)(1)(ii) (1988), which precludes district directors of the Immigration and Naturalization Service from granting asylum under section 208 of the Act to aliens who are firmly resettled in a third country.

(3) An alien's firm resettlement in another country is a factor to be evaluated in determining whether asylum should be granted as a matter of discretion under the standards set forth in *Matter of Pula,* 19 I&N Dec. 467 (BIA 1987).

(4) A finding that an alien has been firmly resettled in a third country would normally preclude a grant of asylum as a matter of discretion, unless the alien can demonstrate countervailing equities in his favor that are compelling in nature.

(5) Whether or not an outstanding offer of permanent residence or citizenship to all Jews who arrive in Israel constitutes a specific offer of permanent resettlement to the respondent, the pertinent regulations and the Board's prior decisions cannot be read so restrictively that the respondent's circumstances in Israel become irrelevant.

(6) An alien will not be found to be firmly resettled elsewhere if it is shown that his physical presence in the United States is a consequence of his flight in search of refuge, and that his physical presence is reasonably proximate to the flight and not one following a flight remote in point of time or interrupted by an intervening residence in a third country reasonably constituting a termination of the original flight in search of refuge.

(7) The question of firm resettlement is not always limited solely to the inquiry of how much time has elapsed between the alien's flight and the asylum application, where other factors germane to the question of whether the alien has firmly resettled include family ties, intent, business or property connections, and other matters.

(8) A determination that the respondent was not firmly resettled in Israel does not end the Board's inquiry as to whether the respondent should be granted asylum as a matter of discretion, where the respondent did have some ties to Israel, and such ties are a factor to be evaluated in the exercise of discretion.

Interim Decision #3118

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Nonimmigrant—remained longer than permitted

ON BEHALF OF RESPONDENT:                     ON BEHALF OF SERVICE:
Janet A. Savrin, Esquire                                  Louise Cavanaugh
450 Seventh Avenue, Suite 1604                     General Attorney
New York, New York 10123

BY:  Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision dated September 5, 1985, an immigration judge found the respondent deportable as charged under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1982), as a nonimmigrant who had remained in the United States longer than permitted.[1] He also denied her application for asylum under section 208(a) of the Act, 8 U.S.C. § 1158(a) (1982), on the basis of firm resettlement in Israel but granted her application for withholding of deportation to Iran under section 243(h) of the Act, 8 U.S.C. § 1253(h) (1982). He further granted her request for voluntary departure under section 244(e) of the Act, 8 U.S.C. § 1254(e) (1982).[2] The respondent has appealed from that decision. The appeal will be sustained, and the application for asylum will be granted.

The respondent is a 34-year-old native and citizen of Iran. Evidence included in the record establishes that she is Jewish. In various

---

[1] At her deportation hearing, the respondent admitted the factual allegations contained in the Order to Show Cause and Notice of Hearing (Form I-221) and conceded her deportability as charged. The Board finds that her deportability has been established by clear, unequivocal, and convincing evidence, as required by *Woodby v. INS*, 385 U.S. 276 (1966), and 8 C.F.R. § 242.14(a) (1988).

[2] In his decision, the immigration judge ordered the respondent deported to Iran if she failed to depart voluntarily within the time specified and alternatively ordered her deported to Israel if Iran was unwilling to accept her. The immigration judge also ordered that the application for withholding of deportation to Iran be granted if the Immigration and Naturalization Service attempted to deport her to Iran. On appeal, the respondent contends that granting her application for withholding of deportation to Iran, but ordering her deported to Iran if she failed to depart voluntarily, was inconsistent and incorrect. The Board agrees. If the asylum application is denied, but the application for withholding of deportation is granted, the immigration judge should order deportation, contingent upon noncompliance with the grant of voluntary departure, to the country of firm resettlement, in this case Israel, or another designated country for which the order of withholding of deportation does not apply, and order withholding of deportation to the persecuting country, in this case Iran, if the country of firm resettlement or other designated country refuses to accept the respondent. In view of our decision on the asylum application, the Board need not modify the deportation order in this regard.

100

affidavits and statements, as well as her testimony at her deportation hearing, she related that she fled Iran on October 23, 1981, with her mother and brother, traveling over the mountains to Pakistan without a visa, where they later obtained a visa to remain in Pakistan temporarily until November 4, 1981. According to the respondent, after staying 5 days in Pakistan, she and her family flew to Athens, Greece, without visas and, being unsuccessful in obtaining visas there, subsequently flew to Rome, Italy, again without visas. From there, after 2 or 3 days, they flew to Israel without visas in November 1981, where she remained until September 15, 1982. The record also includes the respondent's Iranian passport but does not document the type of visa or status the respondent had during her stay in Israel.

According to the respondent, she obtained a visa as a visitor for pleasure while in Israel, initially intending to remain with her family in Israel only until the situation in Iran improved. In her affidavits, statements, and hearing testimony, she related that she never worked or owned property in Israel and was never directly offered Israeli citizenship, permanent resettlement, or resident status in Israel. She also reported that she had developed pneumonia during her travels and was sick and under a physician's care for 6 months of her stay in Israel. The respondent was hospitalized there due to her illness. She reportedly lived with her grandmother while in Israel, apparently paying rent. Observing that she had visited Israel seven different times in the past, she related that she had gone to school to study Hebrew during her last stay in Israel but had never received any financial assistance for any reason from the Israeli Government, as she had relied on her brothers and her own funds for support.

While in Israel, the respondent was issued a nonimmigrant visitor for pleasure visa by the American consulate on June 10, 1982, with which she entered the United States on September 16, 1982, with her Iranian passport. She was authorized to remain until December 16, 1982, and on November 22, 1982, applied for asylum with the district director. The district director denied the application on November 1, 1984. Deportation proceedings were instituted on March 1, 1985.

The respondent has reported that she initially obtained the nonimmigrant visitor's visa and came to the United States in order to attend a family wedding and to visit her three brothers. According to the respondent, she remained in the United States for several months visiting family and friends and then filed her application for asylum, as she was still unable to return safely to Iran and had no other home. She observed that she had not expected the regime in Iran to remain in power as long as it had and, for this reason, had also not sought asylum in Israel previously. The respondent related that her three brothers, her mother, her sister, and a nephew were in the United States, and that

her only remaining family in Israel was her grandmother. According to the respondent's asylum application, one brother was a student, while her other brothers, as well as her mother and sister, were also asylum applicants.

In conjunction with the respondent's initial asylum application, the district director requested and obtained an advisory opinion from the United States Department of State's Bureau of Human Rights and Humanitarian Affairs ("BHRHA"). In the advisory opinion, dated October 26, 1984, the BHRHA expressed its view that the respondent, if a member of the Jewish faith, had a well-founded fear of persecution if returned to Iran. However, it also concluded that in view of Israel's Law of Return, which entitled the respondent as a member of the Jewish faith to reside permanently and enjoy the rights of citizenship in Israel, it was probable that she was offered resident status, citizenship, or some other type of permanent resettlement. It appeared to the BHRHA that the respondent had become firmly resettled in Israel and was therefore ineligible for asylum pursuant to 8 C.F.R. § 208.8(f)(1)(ii) (1984).

Following the deportation hearing, the immigration judge concluded in his decision that the respondent, as an Iranian Jew, would be persecuted if returned to her native country, and he accordingly granted her application for withholding of deportation to Iran. However, he also denied her asylum application, concluding that she was ineligible due to her firm resettlement in Israel, in that she could have become a resident of Israel and by her own choosing decided not to do so. The respondent contends on appeal that she had not become firmly resettled in Israel.

The respondent bears the evidentiary burden of proof and persuasion in any application for asylum under section 208 of the Act. *Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985), *modified on other grounds, Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987); 8 C.F.R. § 208.5 (1988). In order to establish eligibility for a grant of asylum, an alien must demonstrate that she is a "refugee" within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (1982). That definition includes the requirement that an alien demonstrate that she is unwilling or unable to return to her country because of persecution or a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." In the case at hand, the immigration judge concluded that the respondent had sufficiently demonstrated that she would be persecuted on the basis of her Jewish religion if returned to Iran, and he accordingly granted her application for withholding of deportation to that country. The Service has not appealed that decision. As the respondent has satisfied the higher burden of proof required for

withholding of deportation, it follows that she has satisfied the lesser "well-founded fear" standard of proof required for asylum. *See INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987).

Having established a well-founded fear of persecution on account of religion if returned to Iran, the respondent thus demonstrated that she was a "refugee" within the meaning of section 101(a)(42)(A) of the Act and established her statutory eligibility for asylum under section 208. A finding that the respondent was firmly resettled in another country, namely Israel, does not render her ineligible for a grant of asylum under section 208 by the immigration judge or this Board. Rather, firm resettlement is a factor to be evaluated in determining whether asylum should be granted as a matter of discretion under the standards set forth in *Matter of Pula*, 19 I&N Dec. 467 (BIA 1987).

The immigration judge's conclusion to the contrary most likely stemmed from a reading of language used by the Board in *Matter of Lam*, 18 I&N Dec. 15 (BIA 1981), and *Matter of Portales*, 18 I&N Dec. 239 (BIA 1982). In the former decision, distinguishing withholding of deportation from asylum, the Board stated that "[a]sylum will not even be granted, however, where the alien has been firmly resettled in a third place." *Matter of Lam, supra*, at 18. In the latter decision, the Board relied on *Rosenberg v. Yee Chien Woo*, 402 U.S. 49 (1971), concluding "that the applicants, prior to their arrival in the United States, were firmly resettled in Peru and that they are not entitled to classification as refugees." *Matter of Portales, supra*, at 242. However, these statements, to the effect that an alien's firm resettlement in a third country renders the alien ineligible for asylum, were dicta. Noting in *Matter of Lam, supra*, that the immigration judge had granted the alien withholding of deportation to the People's Republic of China but had not set forth his reasons for denying asylum, the Board remanded the record for an evidentiary hearing on the question of firm resettlement. It was therefore not necessary for the Board to determine at that juncture whether firm resettlement acts as a bar to eligibility for asylum, as opposed to one factor to be evaluated in the exercise of discretion. In *Matter of Portales, supra*, prior to finding that the applicants had firmly resettled in a third country, the Board held that the applicants had not demonstrated a clear probability or a well-founded fear of persecution if returned to Cuba, which in itself rendered the applicants ineligible for asylum. Thus, the Board's finding of firm resettlement was unnecessary to the holding that the applicants were not eligible for relief. The Board hereby withdraws from the above-cited cases to the extent that they state that an alien found to have been firmly resettled in a third country is rendered ineligible for a grant of asylum under section 208 of the Act by the immigration judge or this Board.

Section 208(a) of the Act states that an alien physically present in the United States or at a land border may be granted asylum in the discretion of the Attorney General if it is determined that the alien is a "refugee" within the meaning of section 101(a)(42)(A). Section 101(a)(42)(A) provides:

> The term "refugee" means (A) any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

There is no reference to firm resettlement in section 208 of the Act, and it is not part of the definition of a "refugee" in section 101(a)(42)(A). Aliens outside of the United States may not be admitted as refugees under section 207(c)(1) of the Act, 8 U.S.C. § 1157(c)(1) (1982), if they are firmly resettled in a third country, but this preclusion is limited to admission of refugees outside the United States under the procedures established by section 207, and it is not incorporated by statute in the asylum procedures of section 208. By regulation, a district director is precluded from granting asylum under section 208 to aliens who are firmly resettled in a third country. 8 C.F.R. § 208.8(f)(1)(ii) (1988). However, this regulatory bar applicable to a district director does not prohibit an immigration judge or the Board from granting asylum to an alien deemed to have been firmly resettled. *See Matter of Gonzalez*, 19 I&N Dec. 682 (BIA 1988).

In the absence of any reference to firm resettlement in section 208 of the Act or in the definition of a "refugee" under section 101(a)(42)(A), and in the absence of any regulatory bar, we conclude that an alien is not precluded from being granted asylum by an immigration judge or the Board based on a finding of firm resettlement in a third country. A review of the legislative history of the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102, does not establish that Congress intended firm resettlement to act as a bar to a grant of asylum by an immigration judge or the Board. The Supreme Court's decision in *Rosenberg v. Yee Chien Woo, supra*, also does not require a conclusion to the contrary. The Court, interpreting section 203(a)(7) of the Act (repealed by section 203(c)(3) of the Refugee Act of 1980), held that although the statute failed to mention the "firm resettlement" concept, it was one of the factors which the Immigration and Naturalization Service must take into account in determining whether a refugee seeks asylum in the United States as a consequence of his flight to avoid persecution, as required for a grant of asylum. The Court reasoned that although the statute did not specifically

mention firm resettlement, while it had been expressly stated in predecessor statutes, Congress had added a new requirement that the alien must have "fled" to avoid persecution, noting that both terms were closely related to the "central theme of all 23 years of refugee legislation—the creation of a haven for the world's homeless people." *Id.* at 55.

However, neither section 208 of the Act nor the current definition of a "refugee" under section 101(a)(42)(A) refers to the concept of either firm resettlement or flight. Moreover, Congress expressly provided in section 207 of the Act that aliens outside of the United States could not be admitted to this country as refugees if firmly resettled in another foreign country, but it chose not to incorporate any such language into sections 101(a)(42)(A) or 208. Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. *INS v. Cardoza-Fonseca, supra; Russello v. United States,* 464 U.S. 16 (1983). Congress' intent that firm resettlement should not preclude a finding that an alien is a refugee within section 101(a)(42)(A) can also be gleaned from section 209(b)(1) of the Act, 8 U.S.C. § 1159(b)(1) (1982). That section requires that in order for an alien granted asylum to be adjusted to the status of a lawful permanent resident, the alien must not only continue to be a refugee within the meaning of section 101(a)(42)(A) but also must not be firmly resettled in any foreign country. It is clear that Congress viewed the concept of firm resettlement as separate and apart from the definition of a refugee. It is apparent from a reading of the applicable statutes that Congress intended for an alien still outside of the United States to be precluded from admission to this country as a refugee if he has firmly resettled in a third country, but that once within the United States or at its borders, the alien's resettlement elsewhere should only be considered as a factor in the evaluation of his asylum claim as a matter of discretion.

Turning to the discretionary aspects of the respondent's asylum claim, a finding that an alien has been firmly resettled in a third country would normally preclude a grant of asylum as a matter of discretion, unless the alien can demonstrate countervailing equities in his favor that are compelling in nature. An alien is deemed to be "firmly resettled" if he has been offered permanent resettlement by another country as a consequence of his flight from persecution, unless it is established that the conditions of his residence in that country have been substantially and consciously restricted by the authorities of that country. 8 C.F.R. § 208.14 (1988); *Matter of Portales, supra; Matter of Lam, supra.*

In the case at hand, the immigration judge concluded that the respondent had been "offered" permanent resettlement under Israel's Law of Return, and that her choosing not to become a resident did not obviate the fact of her firm resettlement. However, there is nothing in the record, beyond the BHRHA's perfunctory reference to its existence, documenting the nature and purpose of Israel's Law of Return or the specific provisions of that law. Absent any such documentation, the Board cannot find that the respondent had been offered permanent resettlement in Israel within the meaning of the firm resettlement concept. There exists no evidence that the respondent would be eligible for an offer of resettlement under any such law and no evidence regarding the extent of any restrictions or conditions that may be placed on offers of resettlement under that law. Foreign law is a matter to be proven by the party seeking to rely on it, and the Immigration and Naturalization Service has submitted nothing of record regarding Israel's Law of Return. *See Matter of Annang*, 14 I&N Dec. 502 (BIA 1973).

Moreover, whether or not an outstanding offer of permanent residence or citizenship to all Jews who arrive in Israel constitutes a specific offer of permanent resettlement to the respondent herself, the pertinent regulations and the Board's prior decisions cannot be read so restrictively that the respondent's circumstances in Israel become irrelevant. An alien will not be found to be firmly resettled elsewhere if it is shown that his physical presence in the United States is a consequence of his flight in search of refuge, and that his physical presence is reasonably proximate to the flight and not one following a flight remote in point of time or interrupted by an intervening residence in a third country reasonably constituting a termination of the original flight in search of refuge. *See Rosenberg v. Yee Chien Woo, supra.* The question of resettlement is not always limited solely to the inquiry of how much time has elapsed between the alien's flight and the asylum application. Other factors germane to the question of whether the alien has firmly resettled include family ties, intent, business or property connections, and other matters. *Chinese Am. Civic Council v. Atty. Gen. of United States*, 566 F.2d 321 (D.C. Cir. 1977); *see also Kai Fung Chan v. Kiley*, 454 F. Supp. 34 (S.D.N.Y. 1978); *Chi-Wai Lui v. Pilliod*, 358 F. Supp. 542 (N.D. Ill. 1973); *Matter of Moy*, 12 I&N Dec. 121 (Comm. 1967); *Matter of Chai*, 12 I&N Dec. 81 (Comm. 1967).

As a preliminary matter, the Board concludes that, at the time the respondent first arrived in Israel in November 1981, she was then fleeing persecution, having escaped Iran by fleeing over the mountains into Pakistan. The respondent herself has stated that she and her family had left Iran due to the political situation there. The fact that

she may have had some hope that circumstances there would improve so as to allow her to return does not change the fact that she had fled on account of persecution or a fear of persecution.

However, the record demonstrates that her intervening residence in Israel before applying for asylum in the United States did not reasonably constitute a termination of her original flight in search of refuge. Her later physical presence in the United States remained reasonably proximate to her flight. In this regard, the Board points out that the respondent took no active steps demonstrating that she had firmly resettled in Israel or had an intent to do so. She remained there only 10 months, and during this time lived with her grandmother, recuperating from her illness and attending school in order to study Hebrew. Her attending school in itself does not demonstrate firm resettlement. *See Matter of Chai, supra.* Additionally, she neither worked nor sought employment in Israel. She did not seek any financial or other benefits from the Israeli authorities. The respondent has also testified, and the Service has not contested, that she only received a nonimmigrant visitor's visa in Israel and never sought a more permanent status or the benefits accruing from a more permanent status during her stay in Israel. Although she does have permanent family in that country, this consists solely of her grandmother, while the remainder of her family lives in the United States. Given these circumstances, the Board concludes that the respondent had not firmly resettled in Israel or any other country prior to her application for asylum in the United States.

The determination that the respondent was not firmly resettled in Israel does not end the Board's inquiry as to whether she should be granted asylum in the exercise of discretion. As noted above, the record shows that the respondent did have some ties to Israel, and even if they were not sufficient to demonstrate firm resettlement, such ties are a factor to be evaluated in the exercise of discretion. Among the factors which should be considered are: whether she passed through any other countries or arrived in the United States directly from her country; whether orderly refugee procedures were in fact available to help her in any country she passed through, and whether she made any attempts to seek asylum before coming to the United States; the length of time she remained in the third country and her living conditions, safety, and potential for long-term residency there; whether she has relatives legally in the United States or other personal ties to this country which motivated her to seek asylum here rather than elsewhere; and the extent of her ties to any other countries where she does not fear persecution. *Matter of Pula, supra.*

Moreover, if the respondent engaged in fraud to circumvent orderly refugee procedures, the seriousness of the fraud should be considered.

107

*Id.* Finally, other relevant factors include general humanitarian considerations such as an alien's tender age or poor health, and whether the alien has established statutory eligibility for asylum but cannot meet the high burden required for withholding of deportation. *Id.* The evaluation should be made by considering the entire context of the case, and in the absence of adverse factors, asylum should be granted in the exercise of discretion.

Under the balancing analysis set forth in *Matter of Pula, supra,* the Board finds that a grant of asylum is warranted as a matter of discretion. Although the respondent does have some ties to Israel, her only remaining relative in Israel is her grandmother, while the rest of her family resides in the United States, most of whom were also asylum applicants at the time of the deportation proceedings. As noted above, the respondent neither worked nor sought employment in Israel and essentially spent her 10 months there recuperating from pneumonia and attending language courses. All during this time she had only a nonimmigrant status in Israel. Additionally, the respondent arrived in the United States by legal means through a nonimmigrant visa and applied for asylum while she was still in a legal status in this country. There is no showing in the record that the respondent had a preconceived intent to apply for asylum in this country before coming to the United States so as to circumvent orderly refugee procedures. Her ties to Israel alone should not preclude a grant of asylum as a matter of discretion. They should be balanced with the remaining factors which include the facts that her ties to Israel are somewhat limited, that she came to this country by legal means and applied for asylum while in a legal status here, that there is no evidence that she engaged in fraud in order to circumvent orderly refugee procedures, and that there are no other factors adverse to the respondent in the record.

Accordingly, the asylum application will be granted in the exercise of discretion.

**ORDER:**    The appeal is sustained.

**FURTHER ORDER:**    The application for asylum is granted.