983 F.2d 1075
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Georges Jacques BAROU-BARUKOFF, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-70440.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 6, 1992.*
Decided Jan. 11, 1993.
 
 1
 Before O'SCANNLAIN and RYMER, Circuit Judges, and THOMAS S. ZILLY, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Georges Jacques Barou-Barukoff appeals pro se the decision of the Board of Immigration Appeals that affirmed an Immigration Judge's decision finding him deportable and denying him asylum. We affirm.
 
 FACTS
 
 4
 Appellant Georges Jacques Barou-Barukoff was born in Bulgaria and was an anti-communist activist there until 1952, when he fled to Belgium. After three years spent studying law in Belgium, appellant spent many years travelling and living in Europe, Southeast Asia, and Israel promoting a religious and political mobilization against communism. After living in Israel for 10 years, where his daughter was born in 1977, he came to the United States on a visitor's visa in 1983 with his wife and young daughter. He applied for asylum in 1985, and was denied asylum status on his initial petition.
 
 
 5
 In July, 1986, petitioner was issued an order to show cause alleging that petitioner: (1) was not a citizen or national of the United States; (2) was a native of Bulgaria and a citizen of Bulgaria; (3) entered the United States on October 3, 1983; (4) was admitted as a nonimmigrant visitor for a period not to exceed six months; (5) on January 15, 1986, was granted the privilege of voluntary departure in lieu of the institution of deportation proceedings, such departure to be effected on or before February 15, 1986; and (6) has not departed from the United States. A.R. 116.
 
 
 6
 Appellant was given a deportation hearing in two parts. At the first, Immigration Judge Roy Daniels (IJ) found petitioner was subject to deportation and set a date to continue the hearing to consider petitioner's request for asylum. At the continued hearing, the IJ considered petitioner's renewed application for asylum and found petitioner statutorily eligible for asylum. The IJ denied asylum in the exercise of discretion because petitioner had been granted a safe haven in Belgium and because he came into the United States with the intention of remaining here permanently. However, the IJ granted a withholding of deportation.
 
 
 7
 Initially, petitioner filed his Notice of Appeal to the BIA in Pro Per on December 5, 1986. Nearly two years later, on September 26, 1988, the government served the record on the petitioner and directed him to file his brief on appeal by October 12, 1988. On October 7, 1988 petitioner procured the employment of attorney Land Wayland, who agreed on October 10, 1988 to represent the petitioner on the appeal. Mr. Wayland then on October 12, 1988 filed a form G-28 Notice of Appearance as Attorney or Representative on behalf of the petitioner, concurrently with his Motion for Extension of Time to File Brief on Appeal wherein he listed some of the issues which should be briefed on appeal, together with points and authorities. The IJ granted the motion and extended time to file the brief to October 31, 1988. No brief on appeal was ever filed.
 
 
 8
 The INS then moved for summary dismissal of the appeal due to the failure to file a brief on appeal. Instead of dismissing the appeal, the BIA considered the appeal based on what existed in the record, and upheld the IJ's ruling.
 
 
 9
 Petitioner alleges that the IJ's decision to deny asylum rested on factors and findings not appropriate to the decision or not supported by the evidence in the record. Petitioner also alleges procedural violations at his deportation hearing and argues that the failure of the INS to follow its own procedure warrants reversal. Finally, petitioner alleges that his appeal before the BIA was tainted because his attorney abandoned him after filing his appearance for petitioner and requesting an extension of time to file a brief on appeal, but before such a brief was ever filed.
 
 JURISDICTION
 
 10
 This Court has jurisdiction pursuant to Section 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a, which provides for judicial review of all final orders of deportation.
 
 STANDARD OF REVIEW
 
 11
 In reviewing a finding of deportability, this Court reviews the BIA's interpretations of law de novo. Ramirez Rivas v. INS, 899 F.2d 864, 866 (9th Cir.1990). vacated on other grounds, --- U.S. ----, 112 S.Ct. 858, 116 L.Ed.2d 766 (1992).
 
 
 12
 The BIA's factual findings are reviewed under the "substantial evidence" standard: review is solely upon the administrative record and "the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive." 8 U.S.C. § 1105a(a)(4); Ramirez Rivas v. INS, 899 F.2d at 866.
 
 
 13
 The decision whether to grant asylum to refugees is reviewed under the abuse-of-discretion standard. Florez-DeSolis v. INS, 796 F.2d 330, 333 (9th Cir.1986).
 
 DISCUSSION
 I.
 
 14
 Petitioner claims that the IJ erred in finding that Petitioner had firmly resettled in Belgium and had entered the United States with the intent to stay permanently. He argues that the BIA thus erred in affirming the IJ's decision denying asylum on these grounds.
 
 
 15
 The Attorney General has discretion to grant asylum to "refugees." 8 U.S.C. § 1158(a); INS v. Cardoza-Fonseca, 480 U.S. 421, 428 n. 5, 107 S.Ct. 1207, 1211 n. 5, 94 L.Ed.2d 434 (1987). Because the ultimate grant of asylum is discretionary, an asylum adjudication involves two stages: (1) a determination of statutory eligibility based on establishing a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42)(A), and (2) if eligibility is established, a determination whether to exercise discretion in favor of the grant of asylum. Rodriguez-Rivera v. INS, 848 F.2d 998, 1001 (9th Cir.1988). In both stages, the petitioner bears the burden of proof. Rebollo-Jovel v. INS, 794 F.2d 441, 448 (9th Cir.1986).
 
 
 16
 Petitioner's eligibility for asylum is not at issue since the Board determined that petitioner is statutorily eligible for asylum. The only issue before the Court is whether the Board correctly denied petitioner the discretionary relief of asylum.
 
 
 17
 Under Section 208(a), "[w]hether or not a 'refugee' is eventually granted asylum is a matter which Congress has left to the Attorney General to decide." INS v. Cardoza-Fonseca, 480 U.S. at 450. The statute is simply "a discretionary mechanism which gives the Attorney General the authority to grant the broader relief of asylum to refugees." Id. at 441. The statute does not, however, compel the Attorney General to grant asylum under any particular circumstances or provide standards to utilize in deciding whether to do so in a particular case; it merely says that an alien "may" be granted asylum "in the discretion of the Attorney General" if he or she determines that the alien satisfies the statutory test for "refugee." See id. at 428, n. 5. An alien who is eligible for a grant of asylum "does not have a right to remain in the United States; he or she is simply eligible for asylum, if the Attorney General, in his discretion, chooses to grant it." Id. at 443 (emphasis in original).
 
 
 18
 A decision to deny asylum to a refugee is reviewed under the abuse-of-discretion standard. Florez-DeSolis v. INS, 796 F.2d 330, 333 (9th Cir.1986). An administrative denial of relief can be set aside "only if the [B]oard fails to support its conclusions with a reasoned explanation based upon legitimate concerns." Vargas v. INS, 831 F.2d 906, 908 (9th Cir.1987).
 
 
 19
 In making the decision whether to grant asylum to a refugee, this Court has stated that the decisionmaker ought to consider "the totality of the circumstances and actions of an alien in his flight from the country where he fears persecution." Matter of Pula, 19 I & N Dec. 467 (BIA 1987). Relevant factors include "whether the alien passed through any other countries or arrived in the United States directly from his country, ... the length of time the alien remained in a third country, and his living conditions, safety, and potential for long-term residency there...." Id. An alien's personal ties to the United States, such as whether he or she has relatives legally in the United States, are also relevant. Id.
 
 
 20
 There is substantial evidence in the record to support the IJ's denial of asylum. The Board noted and considered the IJ's determination that after petitioner fled Bulgaria in 1952, he had been granted asylum in Belgium; that he had studied for three years in Belgium, A.R. 78-79; that he had traveled and worked extensively throughout Europe and Southeast Asia using travel documents he received from Belgium, and had returned to Belgium periodically, A.R. 99-104; and that prior to coming to the United States, petitioner spent 10 years in Israel, where his daughter was born in 1977, A.R. 101. A.R. 3-4. The Board also noted that the IJ considered that petitioner had visited the United States in 1977 and had not applied for asylum, and that petitioner does not claim to have any relatives residing legally in the United States. A.R. 4
 
 
 21
 The Board held that a finding that petitioner had resettled in Belgium would not render the petitioner ineligible for a grant of asylum, A.R. 4, but that such a finding "would normally preclude a grant of asylum as a matter of discretion, unless the alien can demonstrate countervailing equities in his favor that are compelling in nature." A.R. 4, citing Matter of Soleimani, Interim Decision 3118 (BIA 1989). The Board noted that IJ Daniels weighed petitioner's anti-drug and anti-communist activities and affirmed his conclusion that they did not constitute compelling countervailing equities.
 
 
 22
 Petitioner argues that, in fact, the IJ never made a finding of "firm resettlement" and instead improperly asserted that petitioner had found a "safe haven" in Belgium. Petitioner contends that "nowhere is 'safe haven' a standard" for consideration of asylum petitions. Petitioner's Brief at 14. However, 8 C.F.R. § 208.8(f) requires decisionmakers to consider whether an asylum applicant has been firmly resettled only insofar as such a finding would then require the decisionmaker to deny asylum to any refugee who is so resettled (unless countervailing equities are present.) Petitioner's arguments regarding the IJ's finding of a "safe haven" versus a finding of "firm resettlement" are not in themselves determinative of the question whether the IJ abused his discretion in considering petitioner's asylum petition. Furthermore, there is substantial evidence independent of firm resettlement to support the IJ's decision to deny petitioner's request for asylum.
 
 
 23
 The Board also considered and affirmed the IJ's conclusion that the respondent came into the United States in 1983 with a preconceived intent to remain permanently. This conclusion is supported by petitioner's Form I-598 answers, which suggest an intent by petitioner to establish his America's Best Life University in the United States, A.R. 119, and by a letter from petitioner to the Secretary of State in September, 1985 in which he states: "When I escaped my native Bulgaria--I was dreaming only for Liberty that means United States of America" and "I applied for and received Asylum in Belgium in 1952--and as everything should come in due time I am applying now for Asylum in USA--the Country of my dreams." A.R. 167. Petitioner also testified that he found refuge in Belgium in order to find his place, which is the United States of America. A.R. 105.
 
 
 24
 Petitioner contends that his admitted intent to remain in the United States, if legally possible, is not indicative of fraud or preconceived intent sufficient to support a discretionary refusal of asylum. However, while it would have been improper for the IJ to use a finding of intent to remain permanently as determinative of the decision to deny petitioner asylum, Matter of Janus and Janek (BIA 1968), 12 I & N Dec. 866, 868; Matter of Pula (BIA 1987), 19 I & N Dec. 467, 473-75, the BIA's decision to deny asylum did not depend solely on its finding that petitioner entered the United States with the preconceived intent to remain. Consideration of petitioner's intent along with the other factors in the record that support the IJ's decision was proper.
 
 
 25
 Petitioner asserted before the BIA that he can no longer return safely to Europe. In its decision, the BIA found that "although the respondent believes that he may be subject to terrorists from Eastern Europe if returned to Belgium, he presented no evidence to show that he would be targeted and stated that he had had no problems in Belgium." A.R. 6. The Board's finding is contradicted by petitioner's testimony at his November hearing, in which he alleged that there had been "many attempt on my life in Belgium and France when I have been residing and lecturing and all over Europe because the frontier opened. You can come from one place to another without control and this is not favorable, especially favorable for protecting ..." A.R. 84. Petitioner explained that his religious position and political organizing made him a target for liquidation. A.R. 84-86. Petitioner stated that he had complained to the authorities in Belgium, but that they had said they would be unable to protect him. A.R. 84-85.
 
 
 26
 However, petitioner did not indicate in his asylum application that he had received any threats in Belgium or Europe. He only noted that he had been persecuted in Bulgaria. A.R. 120. This evidence is sufficient to support the Board's finding that petitioner did not prove a well founded fear of persecution outside of Bulgaria.
 
 
 27
 Petitioner also alleges in his appeal before this Court that he fears for his safety in Israel and that he has been threatened and assaulted there because of his religion. However, he raises this issue only on appeal, and this Court may not consider claims not raised before the BIA. Vargas v. INS, 831 F.2d 906, 907-08 (9th Cir.1987).
 
 
 28
 Taken altogether, the BIA's decision is sufficient to demonstrate that the Board gave actual consideration to petitioner's asylum application and the evidence in the record. The Board's opinion supplies a reasoned explanation for its denial of petitioner's asylum application and we therefore affirm.
 
 II.
 
 29
 Petitioner alleges that the IJ violated the procedural due process requirements for deportation hearings set forth in 8 C.F.R. § 242 by failing to advise Barukoff of his right to representation, to present evidence, object, and cross-examine witnesses, by entering the Order to Show Cause into the record without offering Barukoff an opportunity to object, and by refusing to admit evidence rebutting the IJ's conclusions that Barukoff had acquired permanent residence in Belgium. Petitioner also claims that the IJ failed to follow required procedure by finding petitioner to be deportable without appointing a trial attorney or conducting further inquiry, despite petitioner's denials of several of the allegations to which he was asked to plead.
 
 
 30
 Orders of deportation "shall not be reviewed by any Court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." 8 U.S.C. § 1105a(c). The statutory exhaustion requirement is jurisdictional. Joo v. INS, 813 F.2d 211, 212 (9th Cir.1987). Failure to raise an issue before the BIA has been found to deprive the Court of jurisdiction to review the issue. Vargas v. INS, 831 F.2d 906, 907-908 (9th Cir.1987). Petitioner's only recourse on issues that he failed to present to the BIA in his appeal is to move the Board for reopening or reconsideration pursuant to 8 C.F.R. §§ 3.2, 3.8(a) (1988); Dhangu v. INS, 812 F.2d 455, 460-461 (9th Cir.1987).
 
 
 31
 The question, then, is which of the contested issues, if any, were presented to the BIA for consideration at petitioner's appeal before the Board.
 
 
 32
 Petitioner and his attorney did not allege, and the Board did not discuss, the claim made before this Court that the IJ failed to advise petitioner properly of his rights to representation, to present evidence, to object, or to cross examine witnesses. They also did not raise a procedural challenge to the entry of the order to show cause into the record. Thus petitioner failed to exhaust his administrative remedies on these claims and we will not consider them.
 
 
 33
 However, petitioner's procedural challenge that the IJ failed to conduct further proceedings notwithstanding petitioner's denial of the allegations read to him was presented to and decided by the BIA. A.R. 13 at A; A.R. 29-31. This Court thus had jurisdiction to consider the issue.
 
 III.
 
 34
 Petitioner alleges that the BIA erred in affirming the IJ's finding that Barukoff was deportable as charged because the IJ improperly concluded that Barukoff admitted the allegations of the Order to Show Cause, when in fact he contested material allegations and the charge.
 
 
 35
 "It is a well-known maxim that agencies must comply with their own regulations." Ramon-Sepulveda v. INS, 743 F.2d 1307, 1310 (9th Cir.1984) (citations omitted). An agency abuses its discretion if it fails to follow its own regulations and procedures. Moret v. Karn, 746 F.2d 989, 992 (3rd Cir.1984).
 
 
 36
 However, an alien who alleges due process violations must make a showing that his case was prejudiced or that he was denied fundamental fairness as a result of the violation. Nicholas v. INS, 590 F.2d 802, 809 (9th Cir.1979).
 
 
 37
 The government bears the burden of establishing an alien's deportability by clear and convincing evidence. Espinoza-Martinez v. INS, 754 F.2d 1536, 1539 (9th Cir.1985) (citations omitted). This Court noted in Espinoza-Martinez that "[m]any times ... the alien admits deportability, thereby satisfying the government's burden in this regard." Id. at 1539.
 
 
 38
 INS regulations take account of both the burden facing the government and the high rate of admission of deportability by providing what is essentially a two-track formula for proceeding in deportation hearings, depending upon whether the alien admits or denies deportability. When asked to plead as to the allegations in the order to show cause, if the alien admits the allegations and his or her deportability, the IJ may make a finding of deportability without conducting any further factfinding. 8 C.F.R. § 242.16(b). However, when the alien denies the factual allegations and denies his or her deportability, "the special inquiry officer shall request the assignment of a trial attorney, and shall receive evidence as to any unresolved issues...." 8 C.F.R. § 242.16(c).
 
 
 39
 The transcript of the October hearing shows that petitioner admitted he was a native of Bulgaria, but denied that he was a citizen of Bulgaria. A.R. 51-52. This allegation is not material to petitioner's deportability because petitioner did not claim that he was a citizen of the United States.
 
 
 40
 Petitioner also denied that he was "subject to being deported because [he] stayed in the United States longer than the time permitted." A.R. 52. To rebut that charge, petitioner claimed that he had maintained his legal status and had several visa petitions pending with the INS.
 
 
 41
 Despite petitioner's denial that he had not "stayed longer than the time permitted," the IJ found that Appellant had admitted the allegations in the order to show cause. In doing so, the IJ eliminated the requirement that he "request the assignment of a trial attorney" and "receive evidence as to any unresolved issues" as required by 8 C.F.R. § 242.16(c). Instead, the IJ conducted a second, continued deportation hearing in which the only issue he considered was appellant's asylum request.
 
 
 42
 In Paointhara v. INS, 708 F.2d 472 (9th Cir.1983), this Court found an absence of "reasonable, substantial, and probative evidence" sufficient to uphold the Immigration Judge's finding of deportability where "the colloquy between the Immigration Judge and petitioner's counsel ... reveal[ed] ... no explicit admission" of allegations in the show cause order. Id. at 474. The record of the colloquy between petitioner and the Immigration Judge reveals a clear denial by petitioner of two of the allegations read against him. The IJ's subsequent failure to follow INS regulations before finding petitioner deportable thus appears to be an abuse of discretion. Moret, 746 F.2d at 992.
 
 
 43
 However, on appeal, the BIA held that the IJ had not committed procedural error because "[i]n order to establish an alien's deportability as an overstay, the Service need only show that the alien was admitted as a nonimmigrant for a temporary period; that the period has elapsed; and that the alien has not departed." A.R. 3; Shahla v. INS, 749 F.2d 561 (9th Cir.1984). The BIA found that the INS had established petitioner's deportability by clear, unequivocal, and convincing evidence. Id. The Board correctly held that whether petitioner had visa petitions pending or not, petitioner was not automatically entitled to delay the completion of his deportation proceedings pending consideration of his visa petitions. See Obitz v. District Director of INS, 623 F.2d 1331 (9th Cir.1980) (en banc). A.R. 3.
 
 
 44
 The record shows that petitioner admitted that he was allowed to enter on a nonimmigrant visitor's visa for six months in 1983 and admitted that he had not departed by 1986. These admissions satisfy the literal allegation against petitioner in the show cause order. A.R. 116. However, the allegations as set forth in the order to show cause were different than the allegation to which the IJ asked petitioner to plead. In particular, the allegations as stated in the show cause order recite where and when the petitioner entered the United States, that he did so on a six-month nonimmigrant visa, and that he has not departed the country. Instead of reading the allegations as they appeared in the order to show cause, the IJ told petitioner that "the charge against you is that you are subject to being deported because you have stayed in the United States longer than the time permitted. Is this true?" A.R. 52.
 
 
 45
 In failing to read the order to show cause in its entirety to petitioner before asking him to plead, the IJ failed to follow INS regulations. 8 C.F.R. § 242.16(a); 8 C.F.R. § 242.16(b). This failure resulted in a great deal of confusion to the petitioner. However, even if this Court were to find this procedural irregularity to constitute an abuse of discretion, the record shows that petitioner was not prejudiced by the IJ's failure to follow the regulations. If the IJ had simply read the order to show cause and asked petitioner to plead to each particular allegation, the record shows that petitioners answers were sufficient to constitute admission to the allegations. Thus he would have been found to be deportable in any case. We therefore affirm the Board's decision.
 
 IV.
 
 46
 Petitioner argues that his rights have been prejudiced by the incompetence and abandonment of his counsel of record. However, petitioner failed to raise the issue of ineffective assistance of counsel in his appeal before the BIA, thus he has failed to exhaust administrative remedies on the matter. This court is without jurisdiction to consider the issue, and petitioner's only remedy is to petition the BIA to reopen his appeal. Rogue-Carranza v. INS, 778 F.2d 1373, 1374 (9th Cir.1985).
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3