Joseph Tshibang KALUBI, Petitioner,

v.

John ASHCROFT, Attorney General, Respondent.

No. 02–73945.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 2004.

Filed April 19, 2004.

David C. Tarshes (argued) and Jennifer Warner, Davis Wright Tremaine, LLP, Seattle, Washington, for the petitioner.

Andrew C. MacLachlan (argued) and William C. Minick, Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for the respondent.

Before: O'SCANNLAIN, RYMER, and JAY S. BYBEE, Circuit Judges.

RYMER, Circuit Judge:

This is a rare appeal from the discretionary denial of asylum. The Board of Immigration Appeals (BIA) en banc granted the application of Joseph Kalubi, a native and citizen of the Democratic Republic of Congo, for withholding of removal but denied asylum as a matter of discretion. In a split decision, the BIA held (among other things) that although the determination of the immigration judge (IJ) that Kalubi's testimony was not forthcoming was insufficient to justify an adverse credibility determination under the law of the Ninth Circuit, this finding could support the discretionary denial of asylum. We disagree. If an applicant's testimony on an issue is found credible for purposes of determining whether he is eligible for asylum, he cannot be found incredible on the same issue for purposes of determining whether he is entitled to asylum. The BIA also dismissed its obligation under 8 C.F.R. § 208.16(e) to consider Kalubi's separation from his spouse as not "determinative." However, this factor need not be dispositive and we cannot tell upon what other basis, if any, the BIA discounted its importance. We conclude that the BIA erred in these respects, and therefore reverse and remand.

I

The following facts are taken as true because the IJ did not find that Kalubi's testimony was incredible, and the BIA made no findings of its own:[1] Kalubi is ethnically half Banyamulenge (a Tutsi tribe) and half Kasai. President Mobutu ruled Congo (formerly Zaire) from 1965 until 1997. In 1989 Kalubi learned from a friend who was a member of the national

1. See *Rodriguez–Matamoros v. INS*, 86 F.3d 158, 159 (9th Cir.1996).

intelligence service, Service National d'Intelligence et de Protection (SNIP), that by obtaining a SNIP card for $10 Kalubi could avoid paying taxes and gain free admission to movies and sporting events. Kalubi was told that to get the card he would have to agree to bring SNIP information of any political activity against Mobutu, but he never did. Kalubi believed that SNIP was an organization which protected people and was in charge of issuing travel documents, passports, and authorizations to travel within the country; he did not learn that SNIP was actually a secret police organization that terrorized and persecuted opponents of Mobutu's regime until he read this in 1992.

A civil war erupted after President Kabila came into power in 1997 and the regime began to persecute Rwandans and ethnic Tutsis. Kalubi participated in a demonstration in August 1998 and signed a petition protesting the government's actions. Kalubi was arrested a week later because he was among the rebels and was a Mobutu supporter. He was imprisoned without a hearing and was placed in an over-crowded jail cell with harsh, unsanitary, and life-threatening conditions that were especially difficult for Kalubi because he had suffered from polio as a child. A human rights group pressured the prison to send Kalubi to a hospital for treatment. He escaped and was taken by a priest to Zambia, where he stayed from November 1998 to January 1999. On January 26, 1999, a different priest brought Kalubi to the United States using the Zambian passport of another individual, and instructed Kalubi to go to Canada the next day. Kalubi did not know anyone in the United States, but he knew a pastor in Canada.

Kalubi sought political asylum in Canada but it was denied on account of his membership in SNIP. Canada deported him to the United States. After the former Immigration and Naturalization Service (INS) commenced removal proceedings on June 9, 2000, Kalubi applied for asylum, withholding of removal, and protection under the Convention Against Torture.

The IJ stated that he could not articulate an adverse credibility finding as to Kalubi's testimony that would pass muster under Ninth Circuit analysis. The IJ found that Kalubi was not statutorily ineligible for relief as a persecutor under 8 U.S.C. § 1158(b)(2)(A)(i) because he was not personally involved in SNIP's persecutorial acts.[2] The IJ granted Kalubi withholding of removal and found that he was eligible for asylum because of past persecution. However, the IJ was not persuaded to grant discretionary relief because he did not believe Kalubi was truthful about the extent of his activities for SNIP and because an asylum seeker should not be encouraged to litigate in successive forums.

The BIA reversed the IJ's discretionary denial of asylum as lacking support in the record, but the BIA reconsidered that decision en banc and affirmed. The en banc majority found that Kalubi's membership in SNIP was the most serious adverse factor that militated against a favorable exercise of discretion, that the IJ's finding that Kalubi's testimony about his SNIP participation lacked candor supported the discretionary denial of asylum, and that another factor undermining a favorable exercise of discretion was Kalubi's decision to forum shop instead of applying for asylum in the United States upon his arrival in this country. The BIA also noted Kalubi's absence of family ties in the United States, his age and good health at the time

---

**2.** Section 1158(b)(2)(A)(i) provides that an alien is not eligible for asylum if he "ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion."

of arrival, and the absence of countervailing humanitarian factors. One member concurred but expressed the view that "lack of candor" and "forum shopping" were inappropriate bases for the BIA's decision, while the dissenting members disagreed that any adverse factors were present.

Kalubi filed a timely petition for review.

## II

The Attorney General has discretion to grant asylum to a refugee, that is, to an alien who is unwilling to return to his native country because of past persecution or a well-founded fear of future persecution on account of a prohibited ground. 8 U.S.C. §§ 1158(a), 1101(a)(42)(A). Asylum is a two-step process, requiring the applicant first to establish his *eligibility* for asylum by demonstrating that he meets the statutory definition of a "refugee," and second to show that he is *entitled* to asylum as a matter of discretion. *See Kazlauskas v. INS*, 46 F.3d 902, 905–06 (9th Cir.1995) (discussing the steps). We are only concerned here with the second step, because Kalubi established his eligibility for asylum by virtue of past persecution.

■ By statute, "the Attorney General's discretionary judgment whether to grant [asylum] shall be conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). Thus, when refugee status has been established, we review the Attorney General's grant or denial of asylum for abuse of discretion. *Bolanos–Hernandez v. INS*, 767 F.2d 1277, 1282 n. 9 (9th Cir.1984); *see INS v. Jong Ha Wang*, 450 U.S. 139, 144–45, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981).[3]

Kalubi posits an abuse of discretion in that the BIA chose not to comply with the law governing credibility determinations, it relied on the Canadian asylum proceedings, and it failed to address three important factors—the existence of past persecution and risk of future persecution, Kalubi's separation from his wife, and his disability—that support a grant of asylum. We consider each in turn.

## III

### A

First, Kalubi argues that the IJ and BIA are bound by the IJ's determination that Kalubi's testimony was credible under governing law. Ashcroft counters that the IJ and BIA were free to consider among other factors that Kalubi, although not wholly incredible, was not entirely forthcoming about his involvement in SNIP. In any event, Ashcroft contends that while the IJ recognized that he could not make an adverse credibility determination for purposes of finding Kalubi statutorily ineligible for asylum, the IJ was not persuaded by every aspect of Kalubi's testimony and so correctly denied asylum.

■ In this circuit adverse credibility findings in the eligibility phase must be express and the IJ must offer a " 'specific, cogent reason for any stated disbelief.' " *He*, 328 F.3d at 595 (quoting *Hartooni v. INS*, 21 F.3d 336, 342 (9th Cir.1994)). Testimony must be accepted as true in the absence of an explicit adverse credibility finding. *Kataria v. INS*, 232 F.3d 1107, 1114 (9th Cir.2000); *see Rodriguez–Matamoros v. INS*, 86 F.3d 158, 159 (9th Cir. 1996) (following this rule). And it is clearly our rule that "[w]hen the IJ makes implicit credibility observations in passing, . . . this does not constitute a credibility

---

**3.** We review the BIA's opinion when it renders its own decision without adopting the IJ's, *see Kankamalage v. INS*, 335 F.3d 858, 861 (9th Cir.2003), but we examine both opinions to the extent that the BIA incorporates the IJ's decision as its own, *see He v. Ashcroft*, 328 F.3d 593, 595–96 (9th Cir.2003).

finding." *Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 658–59 (9th Cir.2003) (citing *Aguilera–Cota v. INS*, 914 F.2d 1375, 1383 (9th Cir.1990) ("The mere statement that a petitioner is 'not entirely credible' is not enough.")).

The IJ recognized that he could not make an adverse credibility finding that would pass muster under the law of this circuit. Nevertheless, the IJ found that Kalubi's testimony that he never did anything to assist SNIP was not forthcoming or truthful. This is no different from a statement that Kalubi was "not entirely credible." The BIA, in turn, used this statement to support its discretionary denial of asylum. As it stated, "[a]lthough the determination that the respondent was not forthcoming was insufficient to justify an adverse credibility determination under the law of the Ninth Circuit, the Immigration Judge's finding that the respondent's testimony lacked candor supports the discretionary denial of asylum." [4]

The difficulty is that Kalubi cannot *both* be a member of SNIP who provided no political information *and* a member of SNIP who provided information. The IJ and the BIA were obliged to accept Kalubi's testimony as true because there was no explicit adverse credibility finding. *Kataria*, 232 F.3d at 1114. This means that for all purposes in the asylum proceeding, Kalubi was a member of SNIP but never provided SNIP with political information.

Ashcroft suggests that this rule should not extend to the exercise of administrative discretion when it comes to entitlement. He cites no authority for this prop-osition, and we are not persuaded that X may become not-X just because the process has progressed to step two. *Cf., e.g., Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361–62, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (explaining in a Title VII case that once an employment policy of unlawful discrimination is proved at the liability stage, "[t]he force of that proof does not dissipate at the remedial stage of the trial"). It makes no sense that Kalubi could be both truthful and untruthful on the same issue in the same proceeding. Once it was established that Kalubi did not provide SNIP with information for purposes of statutory eligibility, "the force of that proof" did not "dissipate" for purposes of discretionary entitlement. This is not to say that the IJ or the BIA lacked discretion to decide what consequences to attach to the facts thereby taken as true, or to determine what weight to give them. Put differently, once Kalubi's testimony that he was a member of SNIP who did not provide political information was accepted, the IJ could not make contradictory factual findings even though he and the BIA had discretion to determine what to do with those facts.

We fully appreciate the breadth of the Attorney General's discretion at stage two of the asylum process to consider and evaluate favorable and unfavorable factors. *See, e.g., Jong Ha Wang*, 450 U.S. at 144–45, 101 S.Ct. 1027. Nothing we say here is intended to narrow that discretion. We simply hold that if an applicant's testimony on a particular issue is not found incredible for purposes of determining whether he is

---

4. Neither the BIA nor the IJ offered any explanation for why Kalubi's testimony about not contributing political information to SNIP though not lacking credibility, was lacking candor. Absent any explanation at all, the conclusion—even if otherwise appropriate—is necessarily speculative. *Cf. Castro–O'Ryan v. U.S. Dept. of Imm. & Naturalization*, 847 F.2d 1307, 1314 (9th Cir.1987) (emphasizing that " 'we must understand the basis for [the BIA's] decision and how it arrived at the findings underlying that decision' " (quoting *Cardoza–Fonseca v. INS*, 767 F.2d 1448, 1455 (9th Cir.1985), *aff'd on other grounds*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987))).

eligible for asylum, it must be taken as true—and cannot be found incredible—on the same issue for purposes of determining whether he is entitled to asylum.

The BIA's decision to the contrary constitutes an abuse of discretion and must be reversed.

## B

Kalubi maintains that the BIA's opinion implies that his purchase of a SNIP card, by itself, would justify a denial of asylum and to this extent, was an abuse of discretion. In his view, the remarks are tainted by the BIA's acceptance of the IJ's determination that Kalubi actively assisted SNIP. Regardless, Kalubi submits that even if his purchase of a SNIP card were a relevant factor, the BIA was obliged to examine it under the totality of the circumstances, *see In re H-*, 21 I. & N. Dec. 337, 347–48 (1996), without being influenced by the improper decision to disbelieve Kalubi's testimony about his lack of active involvement.

We do not read the BIA's references to SNIP membership as being fully dependent upon its incorrect reliance on Kalubi's lack of candor. Apart from relying on lack of candor, the BIA noted that Kalubi voluntarily joined the organization and remained a member long after he became aware of its nature. This evidence was not disputed. So the real question is whether the BIA abused its discretion by considering SNIP membership as such as an adverse factor.

▇ There is no definitive list of factors that the BIA must consider or may not consider.[5] Each asylum application is different, and factors that are probative in one context may not be in others. However, all relevant favorable and adverse factors must be considered and weighed. *See*

*Rodriguez–Matamoros*, 86 F.3d at 161 (" '[A]s with any case involving the exercise of discretion, all other factors, both favorable and adverse, should also be considered, with recognition of the special considerations present in asylum cases.' " (quoting *Matter of Chen*, 20 I. & N. Dec. 16, 19 (1989))); *see also Lopez–Galarza v. INS*, 99 F.3d 954, 962 (9th Cir.1996) (citing *Chen*); *Castro–O'Ryan*, 847 F.2d at 1314 (explaining that "all relevant factors must be considered," and that "[a] 'strong negative discretionary factor' may be overborne by 'countervailing equities' " (quoting *Matter of Salim*, 18 I. & N. Dec. 311, 315–16 (1982))); *Mattis v. INS*, 774 F.2d 965, 968 (9th Cir.1985) ("BIA discretionary denials must show that the BIA weighed both favorable and unfavorable factors.").

We cannot say that membership in a terrorist organization is irrelevant to a discretionary asylum determination. Although merely being a member of an organization that persecutes others is insufficient to render an alien statutorily ineligible for asylum as a persecutor, *see* 8 U.S.C. § 1158(b)(2)(A)(I); *Vukmirovic v. Ashcroft*, 362 F.3d 1247 (9th Cir.2004); *Laipenieks v. INS*, 750 F.2d 1427, 1431 (9th Cir.1985), a factor that falls short of the grounds of mandatory denial is not for that reason alone excluded from consideration as an adverse factor for the discretionary, entitlement prong. *See H-*, 21 I. & N. Dec. at 347. Thus, the BIA does not lack discretion to consider Kalubi's membership in SNIP as *a* factor informing its decision. Beyond this, the effect, if any, of his membership, including the fact that he voluntarily retained his membership after learning that SNIP terrorized its opponents, should be for the BIA's judgment in the first instance.

---

**5.** The Seventh Circuit summarized a number of factors that the BIA has deemed favorable,

and unfavorable, in *Shahandeh–Pey v. INS*, 831 F.2d 1384, 1387–88 (7th Cir.1987).

## IV

Kalubi next asserts that both the IJ and the BIA relied on the fact that the Canadian Immigration and Refugee Board had denied Kalubi's request for asylum, which he claims was an abuse of discretion because Canadian law is different from ours. However, it is clear from the record that both the IJ and the BIA recognized the obligation to make a de novo determination without deference to the Canadian decision. While each *referred* to the Canadian proceedings, neither *relied* on the Canadian Board's analysis. There was no abuse of discretion on this account.

Kalubi also faults the IJ and BIA for their belief that Kalubi had decided to forum shop, which he argues was factually and legally erroneous. As with Kalubi's membership in SNIP, we cannot say that the BIA lacks discretion to consider all of the circumstances surrounding an alien's flight from the country where he fears persecution. *See Matter of Pula*, 19 I. & N. Dec. 467, 473 (1987);[6] *see also H-*, 21 I. & N. Dec. at 347. In an appropriate case, "forum shopping" might conceivably be part of the totality of circumstances that sheds light on a request for asylum in this country. In this case, Kalubi suggests that the BIA was wrong about why he failed to appeal the adverse Canadian decision, and if he is right about that, the BIA's reliance upon "forum shopping" as an adverse factor would be severely if not completely undermined. However, we leave this for the IJ and BIA to sort out on remand.

## V

Finally, Kalubi argues that the BIA failed to explain why it believed three relevant factors did not warrant a grant of asylum, specifically, the past persecution that he suffered and his fear of future persecution, his separation from his wife, and his disability. Ashcroft contends that Kalubi has no risk of future persecution in the Congo because he was granted withholding of deportation; the BIA explicitly stated that it considered and found non-determinative 8 C.F.R. § 208.16(e), which provides that in reviewing a discretionary denial of asylum, "[f]actors to be considered will include the reasons for the denial and reasonable alternatives available to the applicant such as reunification with his or her spouse or minor children in a third country"; and other than Kalubi's physical disability from childhood polio, he was in good health because he was found medically able to travel, did not require medical equipment during transport, and had no medical reason for restricting the length of his travel status.

"We have consistently required the BIA to state its reasons and show proper consideration of all factors when weighing equities and denying relief." *Mattis*, 774 F.2d at 968. This means that the BIA must explain what factors it has considered or relied upon sufficiently that we are

---

**6.** The BIA has indicated that among the factors to be considered are whether the alien passed through any other countries or arrived in the United States directly from his country; whether orderly refugee procedures were available to help the alien in any country he passed through; whether he made any attempts to seek asylum before coming to the United States; the length of time the alien remained in a third country; his living conditions while in the third country; his safety while in the third country; the potential for long-term residency in the third country; whether the alien has relatives legally in the United States or other personal ties to this country which motivated him to seek asylum; the extent of the alien's ties to any other countries where he does not fear persecution; and general humanitarian considerations, such as his age or health. *Pula*, 19 I. & N. Dec. at 473–74.

able to discern that it "has heard, considered, and decided." *See Rodriguez–Matamoros,* 86 F.3d at 160 (quotation omitted).

There is no question that "[i]n determining whether to grant asylum as a discretionary matter, the likelihood of future persecution is a particularly important factor to consider." *Kazlauskas,* 46 F.3d at 906 (citing *Pula,* 19 I. & N. Dec. at 474). The BIA and IJ considered Kalubi's past persecution and risk of future persecution, "factoring into[the] decision the fact that [Kalubi] had been granted withholding of removal to the Democratic Republic of the Congo" and finding "insufficient countervailing humanitarian factors present in his application." Kalubi argues that this cannot be adequate as a grant of withholding confers an inferior set of rights, but the difference in rights has nothing to do with persecution in Congo. These statements suffice in the circumstances because withholding of removal eliminates the chance of future persecution as Kalubi cannot be returned to the country from which he fled. *See* 8 U.S.C. § 1231(b)(3)(A).

■ However, we agree with Kalubi that the BIA's consideration of his separation from his wife is not sufficient. The BIA stated that it "considered the provisions of 8 C.F.R. § 208.16(e), but [did] not find them determinative." This statement is conclusory and as such, falls short of " 'set[ting] out terms sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided.' " *Rodriguez–Matamoros,* 86 F.3d at 160 (quoting *Villanueva–Franco v. INS,* 802 F.2d 327, 330 (9th Cir.1986)). More importantly, we infer from the statement that the BIA made that it regarded the regulation as needing to be dispositive to matter. This would not be correct, because the BIA must balance *all* relevant factors and no one factor needs to be determinative. *See, e.g., Castro–O'Ryan,* 847 F.2d at 1314. The regulation makes

separation from an applicant's spouse a relevant factor. Therefore upon remand, Kalubi's separation from his spouse should be considered and how it weighs in the balance of favorable and unfavorable factors should be explained with enough clarity so that we can understand the rationale.

■ Kalubi's quarrel with the BIA's treatment of his health is somewhat different, in that he accepts its relevance as a factor but faults the BIA for relying on his good health despite his disability from polio. He argues that finding him in good health is inconsistent with the real facts, "completely contrary to all of the facts in the record." *Tagaga v. INS,* 228 F.3d 1030, 1034 (9th Cir.2000). We cannot say this is so, given that Kalubi was medically able to travel, did not require medical equipment during transport, and there was no medical reason for restricting the length of his travel status.

VI

*Conclusion*

Regardless of frustration with the credibility rules of this circuit or the batting average of credibility determinations on review by this court, still those rules are controlling and must be followed. *See, e.g., Singh v. Ilchert,* 63 F.3d 1501, 1508 (9th Cir.1995) ("A federal agency is obligated to follow circuit precedent in cases originating within that circuit."). The IJ recognized his responsibility to do this and acknowledged that he could not find Kalubi's testimony incredible. Yet he tried to do through the backdoor what could not be done through the front, finding that testimony he was bound to accept as true was not forthcoming. The BIA embraced this approach. We have already held that absent an adverse credibility determination, testimony must be accepted as true for purposes of determining whether an alien

1142

is eligible for asylum. We now make it clear that if an applicant's testimony on an issue is accepted for purposes of determining whether he is statutorily eligible for asylum, the same testimony must also be accepted for purposes of determining whether he is entitled to asylum as a discretionary matter.

In this case, neither the IJ nor the BIA made an adverse credibility determination with respect to Kalubi's testimony that he never provided political information to SNIP. That testimony must therefore be accepted for all purposes, even though the Attorney General retains discretion to determine the relevance and weight, if any, of the fact that Kalubi belonged to a terrorist organization. We also conclude that separation from one's spouse is a factor that is relevant to the discretionary asylum determination. This being so, how it figures in the balance must be explained sufficiently so that we can tell that it has been "heard, considered, and decided."

PETITION GRANTED AND REMANDED.