**Angel De Jesus FERRER–HERRERA,**
**Petitioner,**

v.

**John ASHCROFT, Attorney**
**General, Respondent.**

No. 03–70534.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 6, 2004.*

Decided Nov. 10, 2004.

Antonio Reyna Salazar, Salazar Law Offices, Seattle, WA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Jennifer L. Lightbody, Mary Jane Candaux, Esq., DOJ—U.S. Department of Justice, Office of Immigration Litigation, Department of Justice, Washington, DC, WWS—District Counsel, Immigration and Naturalization Service, Office of the District Counsel, Seattle, WA, for Respondent.

Before: D.W. NELSON, REINHARDT, and THOMAS, Circuit Judges.

MEMORANDUM **

Angel de Jesus Ferrer–Herrera ("Ferrer") appeals the decision of the Board of Immigration Appeals, which affirmed without opinion the decision of the immigration judge ("IJ"). The IJ found Ferrer removable because he remained in this country after his conditional resident status was revoked. We find the IJ's determination was supported by substantial evidence, and therefore deny the petition for review.

In order to find Ferrer removable as an alien inadmissible due to fraud or willful misrepresentation of a material fact under INA § 212(a)(6)(C)(I), the INS must establish removability by clear and convincing evidence. *See* 8 U.S.C. § 1229a(c)(3)(A). However, in order to find Ferrer inadmissible due to the termi-

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

nation of his conditional residency status, the INS must establish that Ferrer's petition was properly denied by a preponderance of the evidence. *See* 8 U.S.C. § 1186a(c)(3)(D); 8 C.F.R. § 216.4(d)(2).

The IJ concluded that the INS had met the preponderance of the evidence standard. He supported this conclusion with several specific references to the evidence. First of all, there were numerous inconsistencies in Ferrer's testimony. For example, Ferrer testified that his wife, Mary Ellen White ("White") could not attend the interview because she had gone to visit her ailing father in Montana, whereas in her affidavit, White stated that her visit to her ailing father was in Alabama. In addition, Ferrer also provided inconsistent testimony regarding the address of the apartment in which he and White allegedly lived together, as well as the name of the club at which he and White met. The IJ noted that the Petitioner is a Spanish speaker and this may have accounted for some of the confusion on his part between English names. However, the IJ found that cumulatively the inconsistencies coupled with the objective evidence served to undercut the Petitioner's credibility.

Secondly, the IJ discussed the testimony and report of Agent Gralton, who investigated the case for the INS. Gralton's report included the arrest record of White, which included fourteen arrests for prostitution. Six of the arrests occurred during the years of her marriage to Ferrer, and occurred in different locations along the west coast. Gralton also went to the apartment on Russell Road where Ferrer claimed that he and White lived. He interviewed the apartment manager and a maintenance worker, neither of whom recognized a photo of White. He also interviewed one of the women living in Ferrer's apartment, who told him that White had never resided there. Finally, Gralton ran credit history checks on White during the years of her marriage to Ferrer, and she never listed her address as the Russell Road apartment in which they allegedly lived together.

The IJ also discussed the fact that, at the master calendar hearing, he had emphasized that Ferrer should attempt to have White testify either in person or by telephone. The fact that she did not testify, while not fatal to his claim, was another factor to consider in weighing the evidence.

On the basis of this evidence, the IJ concluded that the INS had demonstrated by a preponderance of the evidence that Ferrer's marriage was not entered into in good faith. However, he found that the INS had not established by clear and convincing evidence that Ferrer had entered into the marriage by fraud. This distinction is not contradictory, given the varying burdens of proof. The distinction is also not meaningless, given the fact that this line of reasoning allowed the IJ to grant Ferrer voluntary departure because there was no finding of fraud that would bar a showing of good moral character.

"Whether [Ferrer] entered into the qualifying marriage in good faith is an intrinsically fact-specific question reviewed under the substantial evidence standard. Under this standard, we must affirm unless the evidence is so compelling that no reasonable fact-finder could fail to find the facts were as [Ferrer] alleged." *Damon v. Ashcroft*, 360 F.3d 1084, 1088 (9th Cir. 2004) (internal citations omitted). Unlike the IJ in *Damon*, who based her conclusion on "her own inferences and conjectures," *id.* at 1089, in this case, the IJ based his determination on the objective evidence. This evidence prompted the IJ to find the Petitioner's claims of having married White for love incredible. While our case law does not make marrying for

love a necessary condition of a genuine marriage, it does recognize that the absence of such a motivation is evidence of the lack of intent to establish a life together. *See U.S. v. Orellana–Blanco*, 294 F.3d 1143, 1151 (9th Cir.2002); *U.S. v. Tagalicud*, 84 F.3d 1180, 1185 (9th Cir.1996). We conclude that the IJ's determination was supported by substantial evidence that Petitioner did not intend to establish a life together with White at the time they were married.

At the close of his oral decision, the IJ referred to his conclusion as a "mixed credibility determination." On first glance, this appears paradoxical, for it suggests that the IJ found Ferrer both credible and incredible on the question of whether his marriage was fraudulent. We found this type of credibility determination impermissible in *Kalubi v. Ashcroft*, 364 F.3d 1134 (9th Cir.2004).

However, the IJ's label is a misleading characterization of his own reasoning. In fact, his conclusion was not a mixed determination regarding Ferrer's credibility, but rather a mixed determination regarding the sufficiency of the INS's evidence. Because we find that the IJ's reasoning with regard to the sufficiency of the INS's evidence is an accurate application of the statutory and regulatory language, and his "mixed credibility" label had no substantive impact on his reasoning, we conclude that this is not an error of the type presented by *Kalubi*. Any error that the IJ made by mislabeling his reasoning as a "mixed credibility" determination was harmless.

**PETITION DENIED.**

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.