UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANTONIO PATIO SICAT, | No.   16-73690 |
| Petitioner, | Agency No. A076-686-405 |
| v. | |
| JEFFERSON B. SESSIONS III, Attorney General, | ORDER |
| Respondent. | |

Before:  BERZON and BEA, Circuit Judges, and BERG,[*] District Judge.

The Attorney General's motion to amend the memorandum disposition, filed June 20, 2018, is hereby GRANTED. The memorandum disposition filed on May 10, 2018, is amended by the memorandum disposition filed concurrently with this order. The mandate shall issue forthwith.

---

[*]     The Honorable Terrence Berg, United States District Judge for the Eastern District of Michigan, sitting by designation.

FILED

**NOT FOR PUBLICATION**

JUL 06 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANTONIO PATIO SICAT, | No. 16-73690 |
| Petitioner, | Agency No. A076-686-405 |
| v. | AMENDED MEMORANDUM[*] |
| JEFFERSON B. SESSIONS III, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 14, 2018
San Francisco, California

Before: BERZON and BEA, Circuit Judges, and BERG,[**] District Judge.

Antonio Sicat, a 50-year-old native and citizen of the Philippines, was

ordered removed *in absentia* by an immigration judge (IJ) in March 2016. The IJ

denied Sicat's motion to reopen his removal proceedings and to rescind the order

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Terrence Berg, United States District Judge for the Eastern District of Michigan, sitting by designation.

of removal, and the Board of Immigration Appeals (BIA) affirmed. We hold the BIA and IJ abused their discretion in denying Sicat's motion,[1] GRANT the petition for review, and REMAND for further proceedings.

**1.** Sicat moved to reopen his removal proceedings on the ground that he never received notice of the hearing. *See* 8 U.S.C. § 1229a(b)(5)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(ii). When the immigration court sends a hearing notice by regular mail, there is only a "slight" or "weak[]" presumption that the notice was delivered to the recipient. *See Sembiring v. Gonzales*, 499 F.3d 981, 987 (9th Cir. 2007); *Matter of M-R-A-*, 24 I. & N. Dec. 665, 673 (BIA 2008).

"Where a petitioner actually initiates a proceeding to obtain a benefit, appears at an earlier hearing, and has no motive to avoid the hearing, a sworn affidavit . . . that neither she nor a responsible party residing at her address received the notice should ordinarily be sufficient to rebut the presumption of delivery . . . ." *Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir. 2002). In making that determination, the IJ may consider, among other things, the affidavits of the petitioner and her family members; a petitioner's prior applications and current statutory eligibility for relief, which may be evidence of her motive to appear at (or

---

[1] We review the decisions of both the BIA and IJ when the BIA relies in part on the IJ's reasoning. *Budiono v. Lynch*, 837 F.3d 1042, 1046 (9th Cir. 2016).

avoid) a hearing; and a petitioner's "previous attendance at Immigration Court hearings." *Matter of M-R-A-*, 24 I. & N. Dec. at 674.

Sicat submitted affidavits from himself, his wife, and his adult daughter that no one at his address received a hearing notice from the immigration court. Sicat had previously pursued, intended to pursue further, and actually did pursue further, adjustment of status based on his marriage to a United States citizen, though at the time of his hearing he lacked the approved family visa petition (Form I-130) needed to adjust his status.[2] Sicat had attended all ten of his previous immigration court hearings going back to 2010.

No other circumstances suggested a "motive to avoid the hearing" at issue. *Salta*, 314 F.3d at 1079.

Although Sicat missed his visa interview with U.S. Citizenship and Immigration Services, his wife and attorney appeared at the interview and explained his absence. As noted, Sicat had attended each of his ten immigration court hearings over several years before missing his visa interview. The denial of his wife's I-130 petition—which Sicat needed to adjust his status—was without prejudice. She thus could have, and later did, file another petition on his behalf.

---

[2] Concurrently with Sicat's motion to reopen his proceedings, his wife filed a new I-130 petition on Sicat's behalf and Sicat re-applied for adjustment of status.

Sicat's ineligibility for immigration relief at the moment of his scheduled hearing was therefore not strongly probative of a motive to avoid his removal proceedings; had he known of the hearing, his wife could have filed the I-130 petition before it was held, and could then have sought a continuance of the hearing. *See Matter of M-R-A-*, 24 I. & N. Dec. at 674. In giving "significant weight" to Sicat's provisional ineligibility for relief, improperly applying the presumption that his current marriage was entered to procure an immigration benefit, and according only "limited weight" to the consistent affidavits of Sicat and his family members, the IJ "failed properly to weigh the positive and negative factors in exercising [his] discretion." *Virk v. INS*, 295 F.3d 1055, 1056 (9th Cir. 2002). Likewise, Sicat's absence at one visa interview after appearing consistently at immigration hearings before that, and the absence of any returned mail in the administrative record—a circumstance for which there are in common experience ready explanations other than receipt of the mail—did not outweigh the family's affidavits.[3]

To the extent the IJ failed to credit the family's affidavits because they were "self-serving" and "made at the cusp of . . . removal," or because they failed to

---

[3] The IJ assigned weight to Sicat's purported failure to challenge his removal order until he was detained by ICE. But it makes little sense to hold that against him when his very claim is that he did not receive notice of the hearing or removal order until he was detained.

allege other examples of defective mail delivery, those characterizations also improperly weighed the evidence. *See Bhasin v. Gonzales*, 423 F.3d 977, 987 (9th Cir. 2005). Under these circumstances, the sworn affidavits of Sicat and his family were sufficient to overcome the presumption of delivery. *See Salta*, 314 F.3d at 1079.

**2.** The government submits that if we conclude that the presumption of receipt has been rebutted—as we have—the proper remedy is for the IJ to grant Sicat's motion, rescind his removal order, and consider whether he is eligible for adjustment of status. *See Sembiring*, 499 F.3d at 991. Given the government's position, we do not address whether a more limited remand, for a hearing on the receipt question, could be appropriate. We remand for the IJ to grant Sicat's motion to reopen, rescind the *in abstentia* removal order entered against him, and consider in the first instance his eligibility for adjustment of status.[4]

Petition **GRANTED** and **REMANDED.**

---

[4] We note that the dissent is largely based on the conclusion that Sicat is not entitled to such adjustment, but that is a decision to be made in due course.

*Antonio Patio Sicat v. Sessions*, No. 16-73690

BEA, Circuit Judge, dissenting:

This court "will reverse the denial of a motion to reopen only if the Board acted 'arbitrarily, irrationally, or contrary to law.'" *Maravilla Maravilla v. Ashcroft*, 381 F.3d 855, 857 (9th Cir. 2004) (quoting *Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir. 2000)). In rendering its decision today, the majority ignores this deferential standard and instead supplants the decision of the immigration judge ("IJ") with its own, effectively exercising de novo review rather than the abuse of discretion review which this case requires. *See Yang v. Lynch*, 822 F.3d 504, 508 (9th Cir. 2016). Because I do not believe the Board of Immigration Appeals ("BIA") acted "arbitrarily, irrationally, or contrary to law" when it denied Petitioner Sicat's motion to reopen, I dissent.

I

Since entering the United States under a false name in 1989, Sicat has been married four times to four different women.[1] The first marriage lasted less than

---

[1] There is a fifth woman with whom Sicat apparently maintains a relationship: Zenaida Dizon. Dizon is the mother of each of Sicat's three children, all of whom were born while Sicat was "married" to other women. Not surprisingly, it appears Dizon is not a U.S. Citizen, and so marrying her would have violated the one cardinal rule of Sicat's matrimonial decisions.

1

seven months. During each of the last three, Sicat has attempted to use his nuptials to obtain a legal immigration status. When his third wife, Sheila Castillo, filed a Petition for Alien Relative on his behalf, U.S. Customs and Immigration Services ("USCIS") conducted a site visit to investigate the bona fides of the marriage. The investigators concluded that "strong evidence" suggested the marriage was "entered into for the purpose of evading immigration laws."[2] On December 2, 2009, USCIS denied Sicat's application for adjustment to lawful permanent status. On February 2, 2010, he was placed in removal proceedings. The Department of Homeland Security ("DHS") issued him a Notice to Appear the next day.

In immigration proceedings, Sicat sought again to adjust his status. The IJ held a hearing on his adjustment application on March 6, 2012. However, before the IJ could rule on the application, USCIS issued a notice of intent to revoke its approval of the Petition for Alien Relative based on his marriage to Castillo. USCIS revoked the Petition for Alien Relative on August 15, 2012.

On April 5, 2013, Sicat filed for dissolution of his marriage to Castillo. The couple divorced on November 26, 2013. Wasting no time at all, Sicat married his fourth wife, Allison Chow, the following week, with removal proceedings still

---

[2] Investigators observed, among other things, that Sicat's purported wife did not appear to live at the house and, when asked, occupants of the house gave varying answers as to her whereabouts. They also observed that the alleged marital bedroom contained two beds, in which the children were sleeping, and very few items of women's clothing.

pending. Chow filed a Petition for Alien Relative on Sicat's behalf on April 9, 2014. In light of the new petition, Sicat filed a motion to continue his next hearing while the petition was adjudicated by USCIS. Instead, the IJ administratively closed the proceedings on May 20, 2014.

USCIS began investigating Sicat's marriage to Chow. As part of the investigation, Sicat was scheduled to appear with Chow for an interview regarding her Petition for Alien Relative on December 29, 2014. He did not show. Consequently, USCIS denied the petition as abandoned on January 8, 2015.

On August 19, 2015, Sicat filed a change of address form with the immigration court, providing his new address at 416 Castle Street, Daly City, CA. He also filed a signed form acknowledging that "if [he] miss[es] a court date, [he] can be ordered removed." Two months later, on October 14, 2015, DHS moved to recalendar Sicat's removal proceedings. The IJ granted the motion to recalendar on November 16, 2015, set a status hearing for that March, and sent by mail a copy of the order to Sicat at his Castle Street address.

Sicat did not show up to the status hearing and, as a result, the IJ ordered him removed *in absentia*. On May 12, 2016, Sicat was detained by Immigration and Customs Enforcement (ICE). He immediately retained counsel, and Chow filed a new Petition for Alien Relative. On May 24, 2016, Sicat filed a motion to reopen the removal proceedings, claiming that he had not received notice of the

3

hearing scheduled after his case was recalendared. In support of the motion, he submitted declarations from himself, Chow, and his oldest daughter. In the declarations, each declarant claims to live at the residence and never to have seen correspondence from the immigration court.

The IJ denied Sicat's motion to reopen, reasoning that while an *in absentia* order can be reopened at any time due to deficient notice, a notice mailed to the alien's last provided address by regular mail is entitled to a presumption of effective delivery. This presumption, however, is rebuttable based on consideration of the non-exhaustive list of factors set forth in *Matter of M-R-A-*, 24 I. & N. Dec. 665, 673–75 (BIA 2008). Analyzing these factors, the IJ found that Sicat had not rebutted the presumption. Specifically, the IJ found that the declarations should be given little weight because, although they stated that *all* immigration-related mail had failed to arrive, they did not report that any other mail had gone missing. Moreover, none of the mail had been returned as undelivered; Sicat did not seek to reopen the proceedings until he had been detained; and his questionable status, in light of USCIS's recent denial of his Petition for Alien Relative, gave him a motive not to show up.

Sicat appealed the denial of reopening to the BIA on July 1, 2016, contending that the IJ had given the presumption of delivery too much weight and that the declarations should have been enough to rebut the presumption. On

4

November 9, 2016, the BIA dismissed the appeal "for the reasons given in [the IJ's] decision." On November 21, 2016, Sicat timely appealed.

## II

An order of removal entered *in absentia* may be rescinded "upon a motion to reopen . . . if the alien demonstrates that the alien did not receive notice." 8 U.S.C. § 1229a(b)(5)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(ii). For notice delivered by regular mail, there is a presumption of effective service. *Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir. 2002). However, as this court and the BIA have recognized, the presumption of delivery by regular mail is not a strong one. *See id.*; *M-R-A-*, 24 I. & N. Dec. at 673 ("[W]hen a respondent seeks to reopen proceedings based on a claim of lack of receipt of notice, the question to be determined is whether the respondent has presented sufficient evidence to overcome the weaker presumption of delivery attached to notices delivered by regular mail"). In *M-R-A-*, the BIA identified a non-exhaustive list of factors an IJ is to consider in determining whether the presumption has been rebutted:

> (1) [T]he respondent's affidavit; (2) affidavits from family members or other individuals who are knowledgeable about the facts relevant to whether notice was received; (3) the respondent's actions upon learning of the in absentia order, and whether due diligence was exercised in seeking to redress the situation; (4) any prior affirmative application for relief, indicating that the respondent had an incentive to appear; (5) any prior application for relief filed with the Immigration Court or any prima facie evidence in the record or the respondent's motion of statutory eligibility for relief, indicating that the respondent had an incentive to appear; (6) the respondent's

5

previous attendance at Immigration Court hearings, if applicable; and (7) any other circumstances or evidence indicating possible nonreceipt of notice.

24 I. & N. Dec. at 674. After reciting the factors, the BIA noted that "these are just examples of the types of evidence that can support a motion to reopen." *Id.* Emphasizing the discretion afforded to the IJ in ruling on a motion to reopen, the BIA clarified that IJs are "neither required to deny reopening if exactly such evidence is not provided nor obliged to grant a motion, even if every type of evidence is submitted." *Id.* Rather, "[e]ach case must be evaluated based on its own particular circumstances and evidence." *Id.*

III

Here, the BIA considered the *M-R-A-* factors, in the context of this particular case, and concluded that the weight of the evidence favored denying the motion. The IJ's decision, which was expressly adopted by the BIA, conceded that several factors weighed in Sicat's favor:

(1) Sicat and two family members filed declarations attesting that they never saw a notice from the immigration court. *See M-R-A-*, 24 I. & N. Dec. at 674 (weighing "respondent's affidavit" and "affidavits from family members or other individuals who are knowledgeable about the facts relevant to whether notice was received");

(2) Sicat had a record of diligent attendance before the immigration court in ten prior hearings dating back to August 4, 2010. *See id.* (weighing "the respondent's previous attendance at Immigration Court hearings, if applicable");

6

(3) The instant proceedings were initiated when Sicat arrived in the United States to pursue an adjustment of status application. *See Salta*, 314 F.3d at 1079 (treating petitioner's initiation of a proceeding "to obtain a benefit" as a factor weighing in his favor).

Nevertheless, the IJ also noted that "several factors weigh[ed] against reopening [Sicat's] case." The IJ (or BIA, as the case may be)[3] explained:

(1) "[T]he circumstantial evidence in the record (the absence of returned mail) indicates that [Sicat] received" the notice and order. *See M-R-A-*, 24 I. & N. Dec. at 674 (weighing "other circumstances or evidence");

(2) Sicat "took no action to challenge his in absentia order until he was detained by immigration officers." *See id.* (weighing "the respondent's actions upon learning of the in absentia order");

(3) Sicat "is not statutorily eligible for relief" because (a) his third wife's Petition for Alien Relative was denied based on the finding that the marriage was a sham and (b) he married his fourth wife while the immigration proceedings were pending. *See Sharma v. Holder*, 633 F.3d 865, 871 (9th Cir. 2011) (holding that marrying while in removal proceedings creates a presumption "that the purpose is to 'procure the alien's admission as an immigrant'") (citing 8 U.S.C. § 245(e)); *see also M-R-A-*, 24 I. & N. Dec. at 674 (weighing "prima facie evidence in the record . . . of statutory eligibility for relief, indicating that the respondent had an incentive to appear [or not to appear]");

(4) None of the affidavits filed "allege other defects in the postal service's execution of their duties—only non-delivery of mail from immigration-related government agencies has been alleged." *See id.* (weighing "other circumstances or evidence");

(5) Sicat's "failure to appear at his USCIS interview as a potential [Petition for Alien Relative] beneficiary after receiving actual notice refutes the link

---

[3] This court reviews the BIA opinion to the extent it renders its own decision without adopting the IJ's, and it examines the IJ's decision to the extent it is incorporated by the BIA. *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 n.3 (9th Cir. 2004). Here, the BIA adopted the reasoning of the IJ and added some of its own reasoning. Thus, I examine the relevant portions of both decisions.

between the receipt of a notice and appearance before an immigration official that ordinarily exists." By choosing not to attend his USCIS interview, despite having actual notice, Sicat undermined the credibility he now has to claim his notice was lost in the mail. *See id.* (weighing "respondent's previous attendance" and "other circumstances or evidence");

(6) "The denial of the [Petition for Alien Relative] undermines [Sicat's] incentive to appear at future removal hearings." *See id.* (weighing "prima facie evidence in the record . . . of statutory eligibility for relief, indicating that the respondent had an incentive to appear");

(7) Sicat's wife "did not move to file a new [Petition for Alien Relative] until May 2016," after Sicat had been detained by INS. *See id.* (weighing "any prior application for relief filed with the Immigration Court . . . indicating that the respondent had an incentive to appear");

(8) Thus, while Sicat "may have previously demonstrated a desire to pursue his rights in these proceedings, his most recent actions indicate a lack of diligence in pursuing his case." *See id.* (weighing "whether due diligence was exercised in seeking to redress the situation").

Based on a thorough examination of the record and consideration of the *M-R-A-* factors, the BIA concluded that Sicat had "not presented sufficiently persuasive evidence to overcome the presumption that the Postal Service properly delivered the [notice of hearing]." Given the evidence, this conclusion was not "arbitrar[y], irrational[ ], or contrary to law." *See Maravilla*, 381 F.3d at 857. Nor was it an abuse of discretion, given the deference afforded to the IJ under *M-R-A-*, 24 I. & N. Dec. at 674 (holding that the IJ is not "obliged to grant a motion [to reopen], even if every type of evidence [from the factors] is submitted").

For this reason, I disagree with the majority's conclusions that (1) the IJ "improperly weighed the evidence" and (2) remand is necessary "to resolve

8

whether Sicat received notice of his March 2016 removal hearing." As explained in detail above, the IJ applied the *M-R-A-* factors and weighed the evidence in a way that was not "arbitrar[y], irrational[ ], or contrary to law." *See Maravilla*, 381 F.3d at 857. Accordingly, no remand is necessary.

I would deny the petition, and therefore I respectfully dissent.